# THE STATE v. RIDDLE, Appellant.

### Division Two, February 1, 1904.

1. **Criminal Law**: CONTINUANCE: ADJOURNMENT. The statute entitling a defendant held on bail to his discharge if he is not brought to trial before the end of the third term of court, does not include the term at which the information is filed or the indictment preferred. The record showed that the information was filed on March 8, 1902, during the regular March term, and that the cause was then continued to the September term; at that term, on September 9th, the cause was set for trial on the 30th of said month, at which time, for want of time to try the same, it was passed to October 20th, when, upon application of the State, it was continued to the next regular March term, 1903. At this term, and on July 7, 1903, defendant was placed on trial. *Held,* that three terms of court had not passed, and that defendant was not entitled to his discharge on that ground.

2. ———: SUMMONING JURY: STATUTE DIRECTORY. The statute providing for the impaneling of juries in criminal cases is merely directory, and a failure to comply with its provisions will not be ground for new trial, in the absence of circumstances from which it may be inferred that defendant has been prejudiced thereby.

3. ———: JUROR: COMPETENCY. A member of the jury panel is not rendered incompetent merely because he has heard a part of the testimony of one witness taken on defendant's application for bail, especially if such juror testifies that he has formed no opinion as to defendant's guilt or innocence.

4. ———: CONTINUANCE: ABSENT WITNESS: CUMULATIVE TESTIMONY. Where it appears from the application for a continuance, based upon the absence of a witness, that the testimony of such witness would be merely cumulative, the overruling of the application is not ground for reversal.

5. ———: ———: ———: LACK OF DILIGENCE: TRIAL COURT'S DISCRETION. The granting or refusing of a continuance rests largely in the discretion of the trial court, and, unless it is manifest that such discretion has been abused, the appellate court will not interfere. Where witnesses attend, in obedience

State v. Riddle.

to a subpoena, it is their duty to continue to do so, without further notice, at any and all times until the case has been finally tried. If they fail to do so, defendant has the right to compel their attendance by attachment, and if he neglects to avail himself of this right, when the right to an attachment has been granted by the court, it can not be held that he has used due diligence to procure the attendance of the absent witnesses.

6. ———: WITNESS: CROSS-EXAMINATION. In a prosecution for murder a witness for the State was asked on cross-examination a question with respect to deceased's having been in the penitentiary, when the court remarked, "I suppose that line of questioning would be objected to some time." Defendant's counsel then stated that he did not desire to question the witness further, whereupon the witness was excused, and defendant's counsel excepted to the remark of the court. *Held*, that such remark was not prejudicial error.

7. ———: ABSENT WITNESS: TESTIMONY ON APPLICATION FOR BAIL: DILIGENCE. The testimony of a witness taken on defendant's application for bail should not be admitted at the trial on the ground that such witness "could not be found after diligent search," where it appears that defendant has not used due diligence to learn the whereabouts of such witness or to procure his attendance at the trial.

8. ———: MURDER: INSTRUCTION. Defendant is in no position to complain of an instruction on murder in the first degree where he has been convicted of a lower grade of homicide.

9. ———: INSTRUCTION. An instruction for murder is not defective because it fails to employ the words "then and there with" instead of the words "then and there being." The latter words refer both to the time and the place of the killing, and to the person of the deceased.

10. Terms of Court: ADJOURNMENT OF SPECIAL TERM. An adjournment of a special term of court held in June for the purpose authorized by the statute, is not an adjournment of a regular March term which has been continued until July.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,*
Judge.

AFFIRMED.

*Mozley & Wammack* for appellant.

(1)   The record shows that this case was continued at the March term, 1902, at the September term, 1902,

and at the March term, 1903.  The March term, 1903, came to an end on June 13th, when it was adjourned to court in course; hence, defendant was entitled to be discharged under the statute.  Sec. 2642, R. S. 1899.  (2) Miles Morgan, one of the jurors accepted by the court on the panel of forty, over the objection of defendant, stated that he heard a part of the evidence given in the case on the hearing for bail, but that he didn't have much opinion at all.  He was not a qualified juror— such as the defendant had a right to expect from which to make his final challenges, and he should have been rejected.  State v. Foley, 144 Mo. 609.  (3)  There was no informality that could be urged against the testimony of Finney, taken on the application for bail.  Given under the full sanction of the law, taken down by a sworn officer of the law, in the presence of the accused and of the State's counsel, and affording full opportunity for cross-examination by the attorney for the State, it was no more nor less than Finney's testimony, and his presence could not have added to or taken away one jot from it.  Defendant offered to show that he had made every effort in his power to locate the witness, and that he could not find him, and that he was either dead or out of the jurisdiction of the court, but the court, on the objection of the State, would not even permit the showing to be made.  1 Greenl. Ev. (14 Ed.), p. 218; Sullivan v. State, 6 Tex. App. 319; Shackelford v. State, 33 Ark. 539; Summons v. State, 5 Oh. St. 325; State v. Houser, 26 Mo. 439; State v. Rose, 92 Mo. 206.  (4)  The court was not legally in session and was therefore without jurisdiction to try the case.  State ex rel. v. Woodson, 161 Mo. 454; State ex rel. v. Ross, 118 Mo. 23.

*Edward C. Crow,* Attorney-General, and *Sam. B. Jeffries,* Assistant Attorney-General, for the State; *K. C. Spence* of counsel.

(1)    The record shows that there was but one continuance that defendant could take advantage of, to-wit, that of the September term, 1902, wherein the continuance was granted upon the application of the prosecuting attorney, on the 21st day of October. State v. Streen, 115 Mo. 474; State v. Cox, 65 Mo. 29; State v. Jeffors, 64 Mo. 376; State v. Wear, 145 Mo. 198; Gallagher v. People, 88 Ill. 338; State v. Stewart, 13 Ark. 720.    (2)    The manner of summoning jurors, as required by statute, is directory and not mandatory, and unless the defendant has been in some way prejudiced by the failure to conform to the statute, the judgment or verdict of the jury will not be disturbed. State ex rel. v. Davis, 88 Mo. 584; State v. Ward, 74 Mo. 256; State v. Green, 59 Mo. 413; State v. Pitts, 58 Mo. 556.    (3) Miles Morgan, one of the panel, stated that he was present in the court room when the application for bail in this case came up for hearing, and heard one of the witnesses for the State, and also heard this witness talking, but did not hear all that he said, and to use his own language: "Didn't have any opinion much at all. My brother was of kin to Laws by marriage." (4) The granting or refusing of an application for a continuance by the trial court is a matter resting largely within the discretion of the trial judge, and unless it be found that the court has acted in a manner prejudicial to the defendant, and has abused his discretion, the appellate court will not disturb his finding.    (5)    The words "then and there being," criticised by counsel, refer both to the time and place, and to the person of deceased as alleged.    The information has all the requirements both of the statute and the common law precedents.    (6) The special term of court was held under the statute, independent of the regular term, and had nothing to do therewith.    Its convening and adjournment had no effect whatever on the regular term or any orders that had been made by the court at the regular term.

BURGESS, J.—Defendant was convicted of murder in the second degree and his punishment fixed at ten years' imprisonment in the penitentiary, under an information filed by the prosecuting attorney of Stoddard county in the circuit court of said county, charging him with having at said county, on March 6, 1902, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought shot and killed with a pistol one Gus Laws.

The case is before us upon defendant's appeal.

The facts connected with the homicide are but few, and, briefly stated, are substantially as follows:

The defendant, a young man about twenty years of age, worked in his father's saloon in the city of Dexter. The deceased was a man of mature years, dissipated, turbulent, and dangerous. Bad blood had existed between them for some time, and deceased had threatened to do violence to the defendant. On the day of the homicide when defendant was in the act of leaving the city, deceased was heard to say of him, "If that damned cuss comes back here to-night, there will be hell in town."

Defendant did return that evening at 6:16 o'clock, and in company with Arthur Hammerly went direct to his father's saloon.

After they had gone into the saloon, the deceased entered and applied to defendant an insulting epithet, which it is unnecessary to repeat. About this time defendant and Hammerly walked up to the bar and called for drinks, and while they were standing there, the deceased stepped up by the side of the defendant, and remarked to him, "Who in hell are you?" or words to that effect, whereupon defendant asked him if he was trying to insult him. Laws then turned toward the defendant and said, "You can take it any God damn way you please," and thereupon defendant picked up a whiskey bottle and hit the deceased over the head with it. The deceased then grabbed hold of the defendant and began striking him, when defendant drew his pistol and began

striking deceased over the head with it, when it was discharged, the ball taking effect in deceased's head, killing him instantly.

Defendant testified that the pistol was discharged accidentally, that he had no intention of shooting Laws, but was only using the pistol to keep him off of him.

The court instructed for murder in the first and second degrees, manslaughter in the fourth degree, excusable homicide, and self-defense.

The first assignment of error is with respect to the action of the court in overruling a motion filed by defendant for his discharge upon the ground that three terms of court had been permitted to pass without his consent, without his having been brought to trial.

The information was filed on March 8, 1902, during the regular March term of the circuit court of Stoddard county. The record does not show how the case was continued at this term, nor is it material, for in order to entitle defendant to his discharge on this ground the term of court at which the indictment is preferred, or the information filed, is not included. [Secs. 2641, 2642, R. S. 1899; State v. Wear, 145 Mo. 162.]

At the regular September term, 1902, and on the ninth day of that month, being the second day of the term, the case was called and set for trial on the thirtieth day of said month. But this was not a continuance within the meaning of the statute. It was then passed for want of time to try the same, to October 20, 1902, when, upon application of the State, it was continued to the next regular March term, 1903. As the October adjourned term was but a continuation of the regular September term, this was the first continuance by the State after the information was filed. At the March term, 1903, and on the seventh day of July, defendant was placed upon trial. There are two terms of court each year in Stoddard county fixed by statute. As the defendant was on bail, he was not, under the statute (Sec. 2642, supra) entitled to be discharged of the offense

unless he was not brought to trial before the end of the third term of the court after the information was filed, and it is perfectly plain from the record that such was not the case. He was therefore clearly not entitled to be discharged of the offense. [State v. Steen, 115 Mo. 474; State v. Wear, supra.]

In proper time defendant filed his motion to quash the array of jurors, upon the ground that the sheriff and his deputies who summoned them from which the panel of forty were afterwards selected were not sworn as provided by section 3766, Revised Statutes 1899, in that the array was not selected by an officer first duly sworn as provided by said section, but was summoned by more than one person and by persons not authorized by law to summon them. Also because he had not been furnished with a panel of forty unprejudiced and qualified jurors, and that Miles Morgan, one of the panel of forty, had heard a part of the evidence taken by the court on defendant's application for bail, and therefore would be more or less influenced.

The evidence adduced in support of this motion showed that at the March term, 1903, there was administered by the clerk of the court to the sheriff and two of his deputies the oath prescribed by section 3766, supra, with respect to summoning jurors, and as the adjourned term at which the forty jurors were impanelled was but a continuation of that term, and the form of the oath prescribed applies to jurors summoned after the oath is administered as well as before, there was a substantial compliance with the statute in so far as the jurors summoned by them were concerned. As to the other deputy, Adam Johnson, who summoned part of the jurors, the record does not show that he was not sworn as required by the statute, in the absence of which it will be presumed that the clerk did his duty and administered to him the prescribed oath.

It is not claimed that the sheriff or any of his deputies were guilty of any partiality or improper conduct in

summoning the jury, and, as the statute with respect to impaneling juries in criminal cases is directory merely, even if disregarded that will not be a ground for a new trial, in the absence of circumstances from which it can be inferred that some prejudice resulted to defendant by reason thereof. [State v. Bleekley, 18 Mo. 428; State v. Pitts, 58 Mo. 556; State v. Breen, 59 Mo. 413; State v. Ward, 74 Mo. 253; State v. Gleason, 88 Mo. 582.]

The objection to Miles Morgan as a juror is without merit. He had only heard part of the evidence of one witness when testifying in the *habeas corpus* proceeding, and stated upon his *voir dire* that he did not have any opinion much at all. He was clearly a competent juror.

It is said for defendant that his application for a continuance was improperly overruled. At the regular March term, 1903, on motion of the prosecuting attorney, the case was continued generally. On the 25th day of May next, thereafter, and at the same March term, on motion of the prosecuting attorney the case was reinstated upon the docket and the cause set for trial on the sixth day of July, 1903, thus giving the defendant forty-seven days in which to prepare for trial, and an order was made granting the defendant attachments for absent witnesses.

In the application for a continuance on account of the absence of the witness Rolla Gunter it is stated that he now resides at Caruthersville in the county of Pemiscot, Missouri; that he is a young man who formerly resided in this (Stoddard) county from where he moved to Cape Girardeau county, and that defendant only learned of his change of residence to Caruthersville a couple of weeks theretofore.

The application shows that there was a subpoena issued by the clerk of the court for this witness on the twenty-ninth day of June, seven days before the trial was had. With respect to this witness we therefore think proper diligence was used by defendant in order

to procure his attendance upon the trial, but it is shown in the application for continuance that the facts which could be proven by this witness, if present, were with respect to threats of violence made by deceased against defendant a few hours before the homicide, while the record discloses that threats of this character were proven by defendant upon the trial by several other witnesses, so that his evidence, if he had been present and testified, would have been merely cumulative, and the judgment should not be reversed upon that ground. . [State v. Tettaton, 159 Mo. 354.]

As to witness John H. Harper, there seems to have been no subpoena issued for him until after the twenty-fifth day of May, 1903, which the motion recites was the last sitting of the court with reference to this case, prior to the filing of the application for a continuance, up to which time said witness had been in attendance and was in attendance on said day. The application also fails to show that a subpoena had been issued for witness Finney until June 28, 1903. If these witnesses had theretofore been in attendance as witnesses in this cause, as alleged in the application for continuance, in obedience to subpoena, it was their duty to continue to do so at any and all times until the case was finally tried, without further notice, and for failure to do so defendant had the right to compel their attendance by attachment, which the court ordered to be issued, but it does not appear that defendant availed himself of this order. In fact, no diligence whatever is shown upon the part of the defense in obtaining the presence of these witnesses at the trial on the sixth day of July.

While there is no record showing that the case was taken up by the court on the twenty-fifth day of May, other than the showing made with reference to its reinstatement, yet, by the application for a continuance, it will be observed that sometime prior thereto, defendant was notified to be ready for trial on the said twenty-fifth day of May, as the case would then be called up for trial.

The record does show that on the twenty-fifth day of
May the court gave the defendant the right to obtain a
writ of attachment against any witnesses who were then
absent, requiring them to appear and testify on the sixth
day of July. At no time does it appear that defendant
used that diligence required by law to secure the attend-
ance of the last-named witnesses in question so as to
entitle him to a continuance.

It has always been ruled by this court that the
granting or refusing of a continuance rests largely in
the discretion of the trial court, and unless it is manifest
that such discretion has been abused, this court will not
interfere. [State v. Webster, 152 Mo. 87; State v. De-
witt, 152 Mo. 76; State v. Tettaton, 159 Mo. 354.] And
it does not seem to us that we would be justified under
the facts in holding that such discretion was unwisely
exercised in this instance.

During the cross-examination of a witness by the
name of Smith, he was being questioned by one of de-
fendant's attorneys with respect to the deceased's hav-
ing been in the penitentiary, when the court observed,
"I suppose that line of questioning would be objected
to some time." The attorney then announced that that
was all the questions he desired to ask the witness, and
then excepted to the language of the court. The excep-
tion to the observation of the court was not taken until
after the witness was excused. It is claimed for de-
fendant, however, that the remark was untimely, and
prejudicial error, but we are unable to see how or in
what way it could have possibly prejudiced the defend-
ant's case, or have influenced in the slightest manner
the verdict of the jury, nor do we think it did.

Defendant offered in evidence the testimony of Will
Finney, taken and transcribed by the official stenog-
rapher of the court, on defendant's application for bail,
but this was rejected, and it is now charged that the
court committed error in excluding it. It will be ob-
served that Will Finney was one of the witnesses men-

tioned by the defendant in his application for a continuance.

The contention is that this testimony was admissible upon the ground that the witness could not be found after diligent search.

In speaking of this character of evidence Greenleaf says: "It is also received, if the witness, though not dead, is out of the jurisdiction, or can not be found after diligent search, or is insane, or sick, and unable to testify, or has been summoned, but appears to have been kept away by the adverse party." [1 Greenleaf on Evidence (14 Ed.), p. 218.] The same rule is announced in the case of Shackelford v. State, 33 Ark. 539.

The question here is as to the right of the defendant to reproduce the testimony of a living witness taken upon the application of the defendant for bail in the case under consideration, upon the ground alone that "he could not be found after diligent search." And "inasmuch as this species of testimony is admitted as a sort of judicial necessity, the proof of the facts which constitute the necessity for the departure from general rules ought to be clearly established; before the testimony is admitted—as, that the witness is dead, that diligent inquiry has been made for him where it is most likely he would be found, or that the defendant had caused his absence. The proof on this subject should be complete and satisfactory, as the question of the sufficiency of this proof would necessarily be confided largely to the discretion of the judge, and not be revisable on appeal when properly exercised." [Sullivan v. State, 6 Tex. App. 319.]

Defendant in his application for a continuance alleged that he had reason to believe that said witness was then in the city of St. Louis in this State and that he believed he could procure his testimony to be used on the trial of said cause at the next term of said court. That he had heard that said witness was then in said city and that on the twenty-ninth day of June, 1903, he

caused the clerk of said court to issue a subpoena for said witness directed to the sheriff of said city, but that said sheriff had failed and neglected to return said subpoena as required by law. Do these facts show that such diligent search was made for said absent witness Finney, and his absence sufficiently accounted for at the trial, as to authorize the introduction in evidence of his testimony taken in the *habeas corpus* proceeding? We think not. It was not even stated in the application for continuance that the subpoena issued to the sheriff of the city of St. Louis for the witness was delivered to said sheriff, or mailed to him, nor did defendant ask for a rule upon said sheriff, as he had the right to do, to return said subpoena; besides, it does not appear that any other effort was made by defendant to find the witness in that city. We are of the opinion that the showing, taken in its entirety, did not show that diligent effort required of defendant to learn the whereabouts of the witness Finney, or to show the inability of the defendant to produce him in person on the trial, in order to entitle him to read in evidence the testimony of Finney in the *habeas corpus* proceeding.

The instructions are unchallenged, with the exception of an objection to part of the first, but as this instruction is with respect to murder in the first degree, and defendant was not convicted of murder in that degree, he is in no condition to complain. [State v. Alfrey, 124 Mo. 393.]

The action of the court in giving an instruction of its own motion, after the argument of counsel, is complained of, but as no exception was taken at the time, it can not be considered on this appeal.

It is said for defendant that the information is invalid in that it alleges that defendant "did shoot and strike him, the said Gus Laws, giving to him, the said Gus Laws, *then and there being,* and with the dangerous and deadly weapon," etc.

The contention is, that the information should have

read, "and there with," and that as it does not do so it fails to charge the offense with that certainty required in a criminal prosecution, but we think the words "then and there being" refer both to the time and place, and to the person of the deceased as alleged, and covered the objection urged against it.

A final contention is that the court was not legally in session and was, therefore, without jurisdiction to try the cause. This contention is based upon some supposed proceedings had by the court on the thirteenth day of June, 1903, at a special term of the court, at which time the record shows that the court was adjourned to court in course. It is true, in support of his motion for a new trial, defendant introduced a record entry purporting to have been made on Saturday, June 13, 1903, showing a convening of the court at a special June term, upon an order of the judge of said court, and the adjournment thereof to court in course.

Sections 1605 and 1606, Revised Statutes 1899, provide that special terms of the circuit court may be held for the purpose of trying any person who is charged with an offense, and confined in the jail two months before the regular term of court. The record in this case shows that in June, 1903, a special term of court was held for the purpose authorized by the provisions of the above section, and that on the thirteenth day of June, the special term adjourned and the record shows an adjournment to court in course. This was nothing more than an adjournment of the special term and not an adjournment of the regular term, which had been continued until the sixth day of July.

The term of court held in June, 1903, was called and held for a special purpose authorized by statute, was independent of, and had no connection whatever with, the regular terms fixed by law. Nor could any other business than that for which the special term was called have been transacted at such term unless by agreement of parties.

Our conclusion is that the adjournment of the special term to court in course, or to the next regular term, had no effect whatever upon the adjourned term of the regular term of the court to the time fixed for the trial of defendant, when the case was in fact tried. In other words, that the adjourned term was not adjourned by the adjournment of the special term.

Finding no reversible error in the record, the judgment is affirmed.

All of this division concur.