THE STATE v. PAUL PINE, Appellant.—57 S. W. (2d) 1087.

Division Two, March 3, 1933.

*J. H. Ingenthron* for appellant.

316

*Stratton Shartel,* Attorney-General, for respondent; *Don Purteet* of counsel.

BURNEY, J.—Information was filed against appellant, Charley Clark and Sterling Ford in the Circuit Court of Taney County, Missouri, on the 28th day of September, 1931, charging them with robbery in the first degree.

On October 29, 1931, appellant, together with Charley Clark and Sterling Ford his codefendants, was granted a change of venue to Douglas County.

On January 13, 1932, a severance was granted appellant and the State elected to try him first at the regular January Term, 1932, trial being set for the 19th of January of that year. On the evening previous, without the knowledge of the appellant, the court discharged the regular panel of jurors and instructed the sheriff to pick up a special jury for the trial of appellant. The following morning appellant filed motion for trial by the regular panel; the motion being overruled appellant was placed on trial. The jury found appellant guilty of robbery in the first degree and assessed his punishment at ten years in the State penitentiary to which the court under authority of Section 4428, Revised Statutes 1929, added two years. Appellant's motion for new trial having been overruled and he having been sentenced in accordance with the finding of the jury and court has duly appealed to this court. The facts are substantially as follows:

The prosecuting witness, John Schustarich, at the time of the alleged robbery was engaged in state road work and located at Forsyth, Missouri. Appellant and his codefendants had worked with the complaining witness and lived at Forsyth. At about seven o'clock on the evening of August 28, 1931, the prosecuting witness, appellant and his codefendants Charley Clark and Sterling Ford attended a crap game at Root's garage in Forsyth. Schustarich had prepared to go home when Charley Clark called him to come back of the garage near Swan Creek flowing by, stating that he wanted to give him, the complaining witness, a drink out of a jug of liquor. They proceeded to a point well behind the garage when Clark told the complaining witness to wait. Clark then disappeared and returned soon with a jug of liquor. Almost immediately two other men appeared, one identified as the appellant, who had a pistol in his hand which he directed at Schustarich and Clark and ordered them to hold their hands up. Appellant held his gun on Schustarich, searching him and taking eighty dollars from him in denominations of twenty, ten and five dollar bills. The appellant then cursed the prosecuting witness and ordered him to go down by the creek or lake, Charley Clark going with Schustarich. The complaining witness recognized appellant by his general build and the sound of his voice. Schustarich and Clark immediately went back to the town square and reported the robbery to an officer. Schustarich said that the robbery occurred about eight o'clock or a little after of the evening of August 28

1931. While the night was cloudy he could plainly see the robbers fifteen feet away. The witness did not think the appellant and his codefendant robbed Charley Clark. He was also of the opinion that Clark was one of the robbers and had enticed him behind the garage so that his codefendants could rob him.

Mrs. Janey Boles lived in Forsyth and had known appellant about one year, the latter having lived at her home four or five months prior to the robbery. On the evening of the robbery at about ten or fifteen minutes to eight o'clock she saw appellant in company with Sterling Ford going north past her house in a hurried walk. They passed out of her sight and were gone about fifteen minutes when they reappeared coming up out of an alley that ran down to the creek by the side of Root's garage. Appellant ran in on the porch and Ford went on down the street. Mrs. Boles addressed appellant, saying: "What is the matter Paul, is the sheriff after you?" The appellant did not reply, but went on into the house. Prior to the occurrence of the robbery appellant had said to Mrs. Boles: "Janey I haven't got the money to pay you the board." Mrs. Boles was preparing to leave for Oklahoma on the morning following the robbery. At seven o'clock of that morning he again said to her if she needed any money he would see if he could get it. Later appellant told her: "If I am not here when you come back I will leave the money with Mrs. Everett," and he said, "I might be in jail."

Arthur Adams was deputy sheriff of Taney County and was the officer to whom the complaining witness reported the robbery. On the evening of the robbery the officer saw appellant, Charley Clark and Sterling Ford on the Square at Forsyth. A short time before the robbery he overheard part of a conversation among the three wherein the appellant said to Charley Clark: "I am ready; you can depend on me. Make it snappy." This conversation was heard on the south side of the Square and at its close the three separated, Charley Clark going away for about fifty feet and then turning north, appellant and Ford going east on the Square for about a hundred and fifty feet and then turning off the Square on its east side. The last he saw of them they were going in a northerly direction near the Boles property. About five minutes afterward he saw Charley Clark come from around the corner of the garage with Schustarich. They were going north toward Swan Creek, traveling in an ordinary walk. Appellant Pine and Ford were walking very fast the last he saw of them. About ten or fifteen minutes later he saw appellant and Sterling Ford on the east side of the Square. By this time Schustarich and Clark had reported the robbery to him. Adams was sitting in an automobile parked on the Square in front of the bank building. Schustarich was trying to give the officer a description of the persons who had robbed him when appellant came up to the car and said: "I seen two fellows going south off the east side of the

Square down towards the Blunk property that filled the description."
Charley Clark also said to the officer: "John (meaning John Schus-
tarich) thinks it was Ray Simmons." John immediately spoke up
and said: "No I did not say it was Ray Simmons." The officer in
company with Schustarich and Clark made some investigation of
the robbery on the night of the 28th. On the morning of the 29th he
went to the home of Mrs. Boles where appellant lived, in company
with the sheriff and searched his room. He found twenty-five dol-
lars, two ten dollar bills and one five-dollar bill in the mattress of
appellant's bed. The mattress had been cut about its center and the
money inserted. Appellant was present when the money was found.
On the night of the robbery Schustarich told the officers that appel-
lant was one of the robbers. Other witnesses who were on Mrs.
Boles' porch the night of the robbery testified to seeing appellant
and Sterling Ford just immediately prior to and after the robbery.
Some of them testified that they saw the appellant and Ford coming
out of the alley and running. On the morning following appellant
and Charley Clark and Sterling Ford were standing out in front of
the garage. Some other men were standing there more or less joking
them about the robbery. Charley Clark walked up to a truck that
was going to Springfield and said: "I wonder if the truck will leave
today. I want to go to Springfield today." Whereupon appellant
Pine said: "You would be a damn fool to go to Springfield today.
It would be too damn suspicious."

There was some testimony to the effect that while the appellant
was in the Taney County jail waiting to be transferred to the Douglas
County jail he told the jailer that he would not be in jail when his
trial came around. Later on after the appellant was transferred to
Douglas County the jailer of the Taney County jail found some saws
concealed in the compartment where the appellant was kept. He
also found that one of the bars of appellant's cell had been cut part
of the way through. On the night before appellant was removed
to Douglas County the jailer of Taney County saw Sterling Ford
talking to the appellant through the bars.

The appellant's defense was an alibi; the evidence supporting it
tending to show that while he was at Forsyth on the evening of the
robbery he was not at the place where it was committed.

I. Appellant complains in the first assignment of error in his
motion for new trial that the trial court abused its discretion by its
refusal to grant appellant a trial by a jury selected from the regular
panel. We do not think that the action of the trial court created
error. There is no showing that appellant was prejudiced by the
court requiring the sheriff to summon a new panel of jurors to try
the case. Attention is called by appellant to Section 8760, Revised
Statutes 1929. This section has many times been held to be directory
only. Should it be disregarded that fact would not be a ground for

a new trial under circumstances from which it cannot be inferred that some prejudice resulted to appellant by reason thereof. [State v. Riddle, 179 Mo. 287, 78 S. W. 606; State v. Adams, 316 Mo. l. c. 166, 289 S. W. 948.]

■ ■ II. Appellant states that the court erred in permitting the prosecuting witness to testify as to conversation with Charley Clark not in the presence of appellant, and that the court also erred in permitting witness Janey Boles to testify as to statements made by her to appellant while she was on the witness stand. Mrs. Boles was a witness for the State and it was at her home that the appellant lived. She had testified that appellant, a short time after the alleged robbery, came running up the steps to her home. She was sitting on the porth and said to him, " 'What is the matter Paul, is the sheriff after you?' and he didn't say anything. He went on in the house.''

We think there is no basis for complaint in the admission of this testimony from either witness. Witness Charley Clark had been charged in the information of aiding and abetting in the alleged robbery and this conversation took place just a moment before the offense charged occurred. The testimony of both witnesses went to circumstances which we think the jury could fairly consider.

■ III. The third assignment of error charged in appellant's motion is the cross-examination permitted by the court of appellant's witnesses. The following occurred when witness Ray Simmons testified:

"By MR. MOORE: Q. You were convicted or plead guilty the last term of court in Taney County for transportation of intoxicating liquor or driving a car while intoxicated? A. Yes sir.

"Q. You are also under arrest now for assaulting an officer?

"By MR. INGENTHRON: We object to that and ask that it be stricken from the record.

"By THE COURT: Overruled.

"The defendant by his counsel excepts to the ruling of the court.

"By MR. INGENTHRON: We object to it further for the reason it is no evidence touching the credibility of a man unless there is a conviction.

"By THE COURT: As to a witness it is admissible.

"The defendant objects. Counsel excepts to the ruling of the court.

"By MR. MOORE: Q. You are now under arrest for assaulting an officer in Taney County? A. Yes sir.''

Again, in the cross-examination of George Gillis:

"By MR. MOORE: Q. Are you now under charge of grand larceny in Taney County for stealing cattle?

"By MR. INGENTHRON: We object to that. He is not, and the matter has been disposed of.

"By THE COURT: Objection overruled.

"The defendant by his counsel excepts to the ruling of the court.

"By MR. INGENTHRON: We ask that it be stricken from the record. (No ruling.)

"By MR. MOORE: Q. You are now under charge of stealing cattle? A. Yes sir. . . .

"By MR. MOORE: Q. The case is still pending against you? A. Yes sir."

Section 1752, Revised Statutes 1929, provides that "any person who has been *convicted* of a criminal offense is, notwithstanding, a competent witness; but the *conviction* may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relative to that inquiry." (Italics ours.)

The question asked in the present case related to pending charges of a criminal offense and conceded that neither witness had been convicted.

Is it competent to discredit a witness by asking him if he is charged with a criminal offense which would affect his credibility should he have been found guilty thereof? We do not concede this to be true. Until he has been convicted he enjoys the presumption of innocence and good repute. A charge either by indictment or information against any witness is not to be considered as any evidence of his guilt and in this case the jury could well have become biased and prejudiced on account of the evidence admitted by the trial court on the theory of its being competent as affecting the credibility of the witness. We think the trial court committed reversible error by reason of such admission. [State v. Wigger, 196 Mo. 90, 93 S. W. 390· Kribs v. United Order of Foresters, 191 Mo. App. 524, 177 S. W. 766; State v. Hillebrand, 285 Mo. 290, 225 S. W. 1006.]

IV. The fourth allegation in appellant's motion is too indefinite to present anything for review.

The fifth allegation complains of the action of the court in permitting A. M. Adams, a deputy sheriff, and S. E. Arnold, a justice of the peace, both to remain in the courtroom and each to hear the testimony of the other with respect to statements made to them by appellant. At the beginning of the trial appellant's counsel requested their exclusion. There is no showing of proof that both were in the courtroom during the trial of the case nor did appellant object on that ground when these witnesses testified. In a criminal case the exclusion of witnesses from the courtroom is not a right but a matter of discretion by the court, and there is no showing that the trial court abused its discretion in this case.

The sixth allegation of error is too indefinite to bring

anything before the court for review. It points out no particular testimony which appellant considers objectionable.

The seventh allegation presents nothing for review. It was not necessary for the court to define the term "unlawful" in the main instruction, nor does this instruction tell the jury that appellant's codefendants who testified for him were guilty of the crime charged in the information. There was direct evidence of appellant's guilt, therefore it was unnecessary for the court to instruct the jury on the law of circumstantial evidence. Instruction No. 3 correctly stated the law on the subject of statements and admissions by appellant subsequent to the crime charged. Nor did the trial court err in failing to instruct on the good character of appellant. There was no testimony on which to base such an instruction.

The eighth allegation of error presents nothing for review. There is nothing in the evidence to sustain the statements therein set out nor does the ninth allegation of error present anything for review. It alleges newly discovered evidence. It does not set out the newly discovered evidence nor is it shown that it probably would have produced a different result at the trial or that it could not by reasonable diligence have been discovered before and had on the trial.

V. It is further contended that the court erred in giving Instruction No. 7 at the time it was given; that such instruction should have been given only after the jury had agreed upon the guilt of the defendant. The record shows that the jury after deliberating in an effort to arrive at a verdict "returned into open court for additional instructions and in response to questions of jurors" the court gave the instruction complained of. We find no fault in the court's action and rule against the contention.

By reason of the error committed in the submission of the evidence brought out in the cross-examination of appellant's witnesses the judgment is reversed and the cause remanded for new trial. *Leedy, J.,* not sitting; *Tipton* and *Ellison, JJ.,* concur.