LEEDY, Acting P. J., and DEW and STONE, Special Judges, concur.

## STATE v. HATHAWAY.

### No. 44137.

Supreme Court of Missouri.

Division No. 2.

June 14, 1954.

58

Cecil Block, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

DEW, Special Judge.

The amended information on which the defendant was tried charged him with two prior convictions, and also with the crime of sodomy on September 19, 1951. A jury found defendant guilty and assessed his penalty at life in the penitentiary. The defendant has appealed from the judgment rendered on that verdict.

The first information filed charged the appellant with assault with intent to commit sodomy on September 19, 1951, upon the named prosecuting witness. Appellant entered a plea of not guilty. At trial, after the jury was empaneled, the state asked leave to amend the charge to include two prior convictions of felony, and sodomy. Appellant, through counsel, assented to this request. Upon the filing of notice of appeal, the appellant was allowed, upon his motion, to prosecute this appeal as a poor person. He has filed no brief in this court.

The information, as amended with the consent of the appellant, recited the conviction of the appellant on May 25, 1936, in Alexander County, Illinois, of the offense of assault, a sentence of imprisonment therefor in the Illinois State Farm of the City of Vandalia, Illinois, for the term of one year, and the appellant's imprisonment in accordance with that sentence and later discharge after lawful compliance with said sentence; and recited the conviction of appellant on February 14, 1940, in Alexander County, Illinois, for the offense of burglary, a sentence therefor to imprisonment in the Illinois State Penitentiary for one year to life, his imprisonment under said sentence and his later discharge therefrom. The remainder of the information read as follows: " * * * and that the said William Edward Hathaway, alias Willie Gardner after the said discharge of said William Edward Hathaway, alias Willie Gardner, from said Illinois State Penitentiary, as aforesaid, of the State of Illinois, to-wit, on the 19th day of September in the year of our Lord one thousand nine hundred and fifty-one at the City of St. Louis, aforesaid, in and upon one (prosecuting witness) unlawfully, feloniously, wickedly and against the order of nature did commit the detestable and abominable crime against nature in and upon the person of the said (prosecuting witness) by thrusting his tongue into the private parts of her, the said (prosecuting witness), contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State".

During the trial appellant admitted that he, under the alias of William Gardner, was convicted at St. Charles, Illinois, on the charge of assault, was sentenced therefor and served time at Illinois State Farm at Vandalia, Illinois, from whence he was discharged on April 24, 1937; that in February, 1940, he pleaded guilty to an indictment for burglary in Alexander County, Illinois, and received a sentence of one year to life in the Illinois State Peniten-

tiary, from which he was later paroled. Records of the above proceedings were also introduced by the state.

The prosecuting witness testified that her husband worked at nights, returning home usually about 7:15 a. m.; that she usually arose about that time in order to go to her own employment in a local department store. They lived on the first floor of a house in St. Louis, and rented the second floor to tenants. The weather was warm the morning of September 19, 1951, and the window of her bedroom was open. About five minutes before 7:00 o'clock on that date she was awakened by some one going past her bed. She thought it was her husband and spoke to him. The man proceeded into the kitchen and stood with his back to her. She looked at the clock and saw that it was five minutes before 7:00 and presumed the man was her husband. She called: "Ed, is that you?" There was no answer. She arose, went to the kitchen door and the man turned toward her. She described him as a Negro 5 feet and 6 or 7 inches tall, weighing about 140 pounds. His coat was light blue, hat gray, and his shirt colored. When she saw he was a colored man she screamed. He said: "If you scream, white woman, I'll cut your throat", and put a long-bladed knife against her throat. He threw her upon the bed, forced her gown above her waist and, with his tongue several times penetrated her private parts. He then left the house and ran down the street. The prosecutrix opened the door, tried to scream but could not. She saw the intruder disappear on Ohio Street. She telephoned her neighbor upstairs, who, with her husband, came downstairs and called the police.

The prosecutrix testified that she got a clear view of the man's face; that he had a mustache, and that she noticed the separation between his two middle teeth. She positively identified him as the appellant on January 22, 1952, when he was arrested, and again at the trial. She said that at the time of the assault she had a billfold on the kitchen table containing $24 in currency, which was missing after the man left the house.

A man who lived a few doors distant from the prosecuting witness testified that about 7:15 o'clock a. m. on September 19, he saw a man in the vicinity of the location of the prosecuting witness' residence, and at the time of the arrest and at the trial definitely identified that man as the appellant.

James Spalding, a member of the St. Louis Police Department, testified that on January 22, 1952, he and another officer arrested the appellant at the Sunshine Laundry, where he was employed, and took him to the police station for purposes of identification. He was then wearing a blue coat. Also Officer Glen Pauley testified to the same effect. The laundry was four and one-half blocks from the residence of the prosecuting witness.

Officer Paul Gourley stated that he had been handed a billfold, which was found on the street. It was identified as belonging to the prosecutrix.

In behalf of the appellant his brother testified that it was his practice to take the appellant to his place of employment in an automobile every other day and that on September 19, 1951, he called about five minutes after 7:00 at his brother's room nearby. He said his brother was completing a bath and getting ready to leave for his work, and that they drove to the Sunshine Laundry immediately thereafter.

The defendant testified in his own behalf. He stated that his brother called for him on the morning of September 19, 1951, about 7:00 o'clock, and that he reached his place of employment at the Sunshine Laundry between 7:00 and 7:30, where he worked all that day. He positively denied having ever been in the home of the prosecuting witness or having ever seen or heard of her prior to his arrest. He said that the neighbor who identified him as the man seen near the premises of the prosecuting witness on the day of the assault, remarked, when he saw appellant at the police station, that he was not the man he had seen on the street. A witness from the Sunshine Laundry was produced who identified a time card, showing that

on the morning of September 19, 1951, the appellant reported for work at 7:23 a. m.

In rebuttal, witness Creamer, the neighbor who testified he had seen a man near the home of the prosecuting witness at about the time of the assault, denied that he had said at the police station that the appellant was not the man he had seen that morning on the street.

At the close of the state's case, defendant filed a motion for a directed verdict, which the court overruled. At the close of the entire case, defendant filed a motion for a directed verdict, which the court overruled. The verdict of the jury was: "We, the jury, in the above entitled cause, find the defendant guilty of two prior convictions of felony, and Sodomy, as charged in the Information, and assess the penalty to imprisonment in the penitentiary for life."

■ The first point made by appellant in his motion for new trial is that the information failed to charge him with the commission of any crime under the laws of this state. The two previous felony convictions were admitted. In such a case, conviction for the crime here charged, if the charge be proper, brings this case within the purview of the Habitual Criminal Act, Sections 556.280 and 556.290 RSMo 1949, V.A.M.S. Section 563.230 RSMo 1949, V.A.M.S. reads as follows: "Every person who shall be convicted of the detestable and abominable crime against nature, committed with mankind or with beast, with the sexual organs or with the mouth, shall be punished by imprisonment in the penitentiary not less than two years." We hold the information sufficiently charged the appellant with the commission of sodomy under that section.

■ In Paragraph 2 of the appellant's motion for new trial he claims error of the court in not requiring 47 jurors to be qualified since he was charged with sodomy and also under the Habitual Criminal Act, which carries a mandatory life sentence if found guilty. Not only did the appellant fail to object to the number of jurors prior to the final challenges, but he waived any objections in that respect by his agreement to the jury as finally constituted. As stated, the information first charged the appellant only with assault with intent to commit sodomy (with malice). Thereafter, the appellant assented to the amendment of the information, charging prior conviction on two felonies and the completed act of sodomy. Appellant's counsel not only waived the preliminary hearing and the reading of the amended information, but asked "that this cause may be immediately heard with the same jury heretofore selected yesterday from the charge of assault with intent to commit Sodomy (with malice) to Sodomy." In addition thereto the court interrogated the appellant personally, informing him of the effect of the change in the information and, among other things, asked him: "Are you willing now to submit your cause under the new charge of Sodomy to the jury which was heretofore selected yesterday to the charge of Assault with Intent to Commit Sodomy (With Malice) as set out at that time? Is that correct? A. Yes". In that same connection the state announced the substitution in the information and thereby dismissed any rights to prosecute the defendant under the previous charge. We believe the appellant has waived any complaint as to the number of jurors to which he was entitled after the amendment of the information.

■ Under Paragraph 3 of his motion, the appellant claims the court erred in failing to grant a mistrial when so requested upon the occasion of the prosecuting witness leaving the witness stand when she "broke into a torrent of tears", thus calculated to prejudice the jury against the appellant. The court had the record show that as she left the witness stand she passed out of the presence of the jury, and her husband or some man stepped forward, and she put her handkerchief to her eyes, and the court was unable to say that she then broke into tears. The appellant's counsel insisted that the record show that she attracted the attention of the jury and insisted that her conduct was prejudicial to the appellant. The court ruled that

considering the experience she had undergone it was to be expected that her emotions would be made manifest, and that in such cases when new trials are granted the same things generally happen again. We cannot hold the trial court guilty of error or abuse of its discretion in so disposing of this point. Connor v. Kansas City Rys. Co., 298 Mo. 18, 250 S.W. 574; Boyer v. Missouri Pac. R. Co., Mo.Sup., 293 S.W. 386; State v. Barnes, 325 Mo. 545, 29 S.W.2d 156.

■ In Paragraphs 4 and 5 of the motion for new trial appellant claims error on the part of the court in refusing to sustain his objections "to improper, leading and prejudicial questions asked of said witness by the State", and "in overruling appellant's objections to evidence given by (that witness)" and further erred in overruling "numerous objections to incompetent, prejudicial and irrelevant evidence given by the witness Creamer on behalf of the state". These two assignments of error in the motion for new trial were general, indefinite and insufficient, presenting nothing for our review. Section 547.030 RSMo 1949, V.A.M.S.; State v. Jonas, Mo.Sup., 260 S.W.2d 3; State v. Gaddy, Mo.Sup., 261 S.W.2d 65.

In Paragraph 6 of the motion appellant complains that the court excluded his testimony as to what he said in answer to statements made by the prosecuting witness and witness Creamer in the police station when they viewed the appellant, at which time, it is asserted, he denied the accusation. Especially was this erroneous, he contends, because those witnesses were allowed to offer their statements on that occasion. During the examination of those witnesses the court, upon objection, ruled that the inquiry by appellant's counsel as to what appellant stated on that occasion would be self-serving statements and improper. An offer of proof was made by his counsel that he denied the accusation at that time and place; that the police officer agreed that he was not guilty, and that the matter would have to be referred to other police officers for investigation, and that

appellant requested the records be checked to verify his statements so that he might not be confined and lose his job. Upon objection, the offer was denied.

During the course of his testimony appellant related that at the station he was required to put on a blue top coat and a white hat and was viewed by the prosecuting witness. He was asked the question: "Q. After she looked at you with this top coat and hat, did you say anything to her? A. I haven't said a thing". Furthermore, during the testimony of the prosecuting witness, who was describing the occasion at the police station when she was called to view the appellant, and was asked to look at him "face to face", she was asked: "Q. And you saw him face to face how long, please? A. Between 5 and 10 minutes." "Q. And did the police ask you to say anything or to talk? A. The police asked if he knew me or had ever seen me and his answer was 'No'." "Q. His answer was what, please? A. 'No'". In his own testimony he was asked by his counsel if he had ever committed any kind of an assault or attack against the prosecuting witness, to which he replied: "I have not." "Q. Did you ever see her before? A. Not until I saw her in the Third District" (police station).

■ Thus the appellant's effort to prove that he denied his guilt at the time of his arrest and at the police station, and at the trial was not materially interfered with by the court's ruling complained of, when his showing on that issue was made by himself and other witnesses as above outlined. The point is without merit.

■ In Paragraph 7 of the motion appellant asserts that the court erred in refusing an instruction in the nature of a demurrer at the close of the state's case because the prosecuting witness did not give any evidence concerning the crime charged within the meaning of the statute relating to sodomy. In our view the state's evidence was sufficient to constitute the crime charged, and the court properly overruled the proffered instruction at the close of the state's case.

By his Paragraph 8, appellant complains that all of the instructions given conflicted with each other, did not properly state the law, were comments on the evidence and placed an undue burden on defendant to establish his innocence. The facts on which such charges are made are not stated and we are unable to determine the application of the paragraph. The assignment fails to conform to Section 547.030 RSMo 1949, V.A.M.S. and our Rule 27.20, 42 V.A.M.S., and will be disregarded.

In Paragraph 9 of his motion appellant complains that the court erred in refusing an instruction in the nature of a demurrer at the close of the whole case. We believe that, under the record, the court properly refused such instruction.

It is pointed out in Paragraph 10 of the motion that the court sustained the state's objection to a statement made by counsel for defendant that in event of a disagreement by the jury the case would be retried or some other disposition be made of it, and that the action of the court in sustaining the objection to such statement caused the jury to be biased and prejudiced and to be influenced to bring in a unanimous verdict of guilt. With no further showing of the basis for this complaint, we are unable to declare that the court abused its discretion or otherwise erred in the ruling made.

It is claimed in Paragraph 11 of the motion that the court erred in not declaring a mistrial on account of the prejudicial conduct of the prosecuting witness who, it is stated, during the close of the arguments to the jury, sat in the court room and visibly cried, causing the jurors to be biased and prejudiced against the appellant, especially due to the fact that the prosecuting witness did not view the appellant until three and a half months after the alleged attack, and considering the undisputed fact that appellant reported for work seven or eight minutes after the time of the alleged incident, and that upon three arrests during the interim, was released without any attempt made to link him with the alleged crime. The record does not substantiate the alleged presence of the prosecuting witness at the time mentioned, nor her conduct at such time and place as described, nor does it justify a holding that the trial court abused its discretion. The point is overruled.

Following the verdict the record shows the allocution, judgment and sentence in due time and form. We find no error materially affecting the merits of the case. The judgment is affirmed.

LEEDY, Acting P. J., and STONE, Special Judge, concur.