STATE of Missouri, Respondent,

v.

Mose Wesley SANDERS, Appellant.

No. 49283.

Supreme Court of Missouri,

Division No. 2.

Oct. 8, 1962.

Martin Anderson, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Robert R. Northcutt, Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Presiding Judge.

Defendant was convicted by a jury of first degree robbery. The punishment assessed by the jury was the minimum of five years in the penitentiary, and the court thereafter sentenced defendant to such a term. He has appealed, after an unavailing motion for a new trial. A brief has been filed here on defendant's behalf. A short summary of the evidence will suffice, as the sufficiency of the evidence is not questioned.

The State's evidence reasonably showed these facts: that two Negro men came up to the window or counter of the "Dairi-Swirl" at 1701½ East Ninth Street in Kansas City, at about 9:45 p. m. on July 14, 1961, and ordered hamburgers; one Carl Ribando was in charge. He proceeded to cook the hamburgers and when he started to hand the second man his, the man pointed a revolver at him and told him to "leave the nickels and dimes out"; Ribando took $35 from the cash register, put it in the sack with the hamburger and gave it to the man, whereupon the two left; the man with the revolver wore a red bandanna on his head. The "Dairi-Swirl" had exterior lighting. Ribando promptly called the police and reported the occurrence; he was later unable to identify the men among suspects at police headquarters. On August 14, 1961, one month later, a man walked up to the window at the same place about 9:00 p. m. and Ribando immediately recognized him as the robber to whom he had given the money previously; this man placed a cigar box on the ledge or counter, and momentarily waited; Ribando did not go to the window but said, "Wait a minute," and told his mother nearby to call the police; when she got up to do so, the man walked away. On this occasion the man again wore a bandanna which Ribando thought was blue. After a brief interval, Ribando went outside and noted that this man had walked west on Ninth to Highland Avenue and south on Highland. When the officer came, Ribando reported the events, including his identification of the man, and the two rode south on Highland in the police car. They found defendant (as he turned out to be) walking near Eleventh and Highland and pulled in behind him; Ribando identified him to the officer as the man they were looking for. When the officer called "hold it," the man reached in the cigar box which he was carrying and took out a revolver but, as the officer drew his own gun and ordered him to "drop it," he did so. The revolver was a .32 caliber, nickel or chrome plated, slightly rusted, and containing three loaded shells and one empty; it was identified at the trial as identical to the one used in the July robbery. A blue bandanna was found in the man's pocket.

This man was arrested and is the present defendant; he was positively identified by Ribando at the trial as the one who had robbed him.

The defendant denied all connection with the robbery, testified that he had been drinking in taverns and playing pool on the afternoon of July 14, 1961, and that he was at home or next door from about 6:30 p. m. and during the rest of that evening. In this latter statement he was largely corroborated by two witnesses, Ernestine Rowe and Nina May Winn. Reference will be made to one of these later. Defendant also testified that he found the revolver and the cigar box in the street or gutter on Ninth Street while walking in the neighborhood on the evening of August 14, 1961, and that, while he may have walked by the "Dairi-Swirl," he did not stop there at all. He admitted that he had a "head-scarf" with him on the evening of August 14, which he said he sometimes wore to give his "hair a wave" when he went to bed, or when the wind was blowing.

■ Counsel for defendant raises here the inadmissibility and prejudicial effect of several portions of the evidence, apparently assuming that he is permitted to do so under the first assignment in his motion for new trial. That assignment is as follows: "Because the Court erred in admitting incompetent, irrelevant, immaterial and prejudicial evidence offered by the plaintiff over the objection of this defendant." Such a general assignment is wholly insufficient under Rule 27.20, V.A.M.R. to preserve any evidentiary point for review. State v. Thomas, Mo., 309 S.W.2d 607, 610; State v. Hathaway, Mo., 269 S.W.2d 57, 61; State v. Turner, Mo., 320 S.W.2d 579, 586; State v. Foster, Mo., 349 S.W.2d 922; State v. Reece, Mo., 324 S.W.2d 656; State v. Howard, Mo., 360 S.W.2d 718. Consequently, we proceed no further with the argument under that point.

■ A point is also made that the prosecutor was permitted to make inflammatory statements in his closing argument which were not based on the evidence. In the motion for new trial the corresponding assignment was equally general. The particular statements complained of, or at least their substance, should be pointed out; consequently, the assignment in the motion is insufficient to preserve the point for review. State v. Farris, Mo., 243 S.W.2d 983, 988; State v. Howard, supra. We have, of our own motion, examined the remark now complained of; it was: "You see that is the pattern of criminal psychology, returning to the scene of the crime and making an effort to attempt it the second time." The objection made at the trial was directed at the suggestion that defendant was back "to commit another crime." The statement as made was a fair and permissible inference from all the evidence and, moreover, counsel had permitted the prosecutor to make a substantially similar statement in his initial argument without any objection. There was no error in this ruling, even had the point been preserved.

We next consider an evidentiary point which defendant has raised in his motion for new trial, giving him the benefit of some doubt. This concerns the cross-examination of Ernestine Rowe, one of defendant's alibi witnesses; the point is made that the court permitted a false issue to be introduced, instead of confining the evidence to such as would challenge her veracity and character as a witness. The witness was asked if she recalled talking to Officer Thomas. When an objection to this was overruled, the witness was then asked (before she answered the prior question) if, on a certain day, she had talked with Officer Thomas of the Kansas City Police Department "about a matter of some stolen money orders"; objection was made that this question did not inquire about any conviction and was inflammatory; this objection was sustained. The witness was then asked if she had ever made any statement "indicating that you participated with Carol Taylor in the procurement, in the cashing of two checks * * * taken from

Ronald Stone * * *." An objection was overruled and the witness answered, "No"; she also denied making any such statement "to anybody." An objection was then sustained to a question asking whether she denied making such a statement to Officer Thomas; a motion that the jury be instructed to disregard the "statement" (question) was not ruled on. Thereafter Officer Thomas was produced in rebuttal and, over a rather general objection to any questions "along the line of investigation of a complaint * * * a side issue * *," the witness was permitted to testify that he had interviewed Ernestine Rowe about a complaint concerning some money order blanks, after being assigned to the investigation, and that she made an oral statement. He was asked also if she denied participation; an objection and considerable colloquy followed, and that question was never answered. The officer's testimony was offered expressly as *impeachment*, "because she denied she had made any statement" to the Police Department. Defendant made no sufficient assignment in his motion for new trial to the admission of the rebuttal testimony, so we confine our primary consideration to the cross-examination of Ernestine Rowe.

Counsel for the State seek to justify this line of questioning upon the theory that, in fact, no impeachment actually resulted, even from the rebuttal testimony, since Officer Thomas did not testify that the witness *did* implicate herself. That is a rather ineffective answer. The question is not whether she was actually impeached, but rather that references to an *investigation* of the witness for a possible criminal offense, not even rising to the dignity of a formal charge, were paraded before the jury in a palpable effort to discredit her, and this on a purely collateral matter. In spite of confusion in the questions, objections, rulings and answers as they appear in the record, there is no doubt that this dominant idea was put across to the jury.

■ Counsel for the State apparently treat this as merely an attempt to impeach the witness upon a collateral matter; and, as indicated above, say that no impeachment was thus accomplished, so no harm was done. It has been held that a witness may not be cross-examined as to a collateral matter for the purpose of impeaching his testimony later by contradicting him. Marrah v. J & R Motor Supply Co., Mo.App., 165 S.W.2d 271, 275. But the principal vice in the present line of questioning arises from the violation of the established rule that a witness' credibility may not be attacked by showing a mere arrest, investigation, or criminal charge which has not resulted in a conviction. Marrah, supra; State v. Menz, 341 Mo. 74, 106 S.W.2d 440; Vol. 20 Mo.Law Review, loc. cit. 181, 182; State v. Pine, 332 Mo. 314, 57 S.W.2d 1087; State v. Perkins, 342 Mo. 560, 116 S.W.2d 80; Holden v. Berberich, 351 Mo. 995, 174 S.W.2d 791, 149 A.L.R. 929; Hoffman v. Graber, Mo.App., 153 S.W.2d 817. Perkins, supra, specifically involved questions concerning calls on the witness by the police on suspicion or in an investigation. An exception to the rule has infrequently been noted where the inquiry showed a specific *interest* of the witness. That question was discussed in Holden, supra. We have noted the case of State v. Foster, Mo., 349 S.W.2d 922, (not cited by either party) but we do not consider it applicable here. The court there held questions and answers concerning an admission or confession of a crime not to be erroneous. But the underlying facts and the proceedings there were substantially different from ours, and the witness volunteered an answer before an objection could be ruled on. We do not regard that opinion as creating a general exception to the rule stated; in any event, the questions asked here were too vague and confused to be considered as calling for a confession of a crime.

■ While the impropriety of the testimony of Officer Thomas has not been preserved, we may consider it in determining the prejudicial effect of Ernestine Rowe's

cross-examination. Thomas was permitted, over objection, to testify that he was assigned to the investigation of a complaint concerning the "procurement" of some money order blanks (one answer referring to them as "stolen" was stricken as not responsive), that he talked to Ernestine Rowe during the course of this investigation, and that she made an oral statement to him. A question as to whether Rowe ever denied to him that she had participated in the theft of such money orders went unanswered in the ensuing colloquy and the confusion thus engendered, with no ruling on an objection. We hold, especially in the light of this background, that the indicated cross-examination of Ernestine Rowe constituted reversible error.

■■ The remaining point made is that the conduct and attitude of the court toward the defendant and his witnesses were improper. More specifically, counsel stated during the cross-examination of defendant: "The record won't reflect it so I would appreciate and I am going to make a request that every statement made by the defendant the Court smiles as though it could not be believed, I would like that in the record." No ruling was made or required. Again, during the same cross-examination and following a motion for a mistrial because of a specific question asked, counsel added: "* * * and by the expression on the Court's face it has not rendered a fair and impartial trial to this defendant as he is entitled." The court then overruled the objection (motion). It is hardly necessary to say again here that the court must always maintain an absolute impartiality in any trial, both in its remarks and in its conduct generally; it should not do or say anything which might prejudice the jury or be construed by the jury as indicating a belief in defendant's guilt or innocence. State v. Hudson, 358 Mo. 424, 215 S.W.2d 441; State v. Castino, Mo., 264 S.W.2d 372; State v. Jones, Mo., 197 S.W. 156; State v. Bunton, 312 Mo. 655, 280 S.W. 1040; Canons of Judicial Ethics, Canon 3.

If this record demonstrated any departure from these standards of judicial conduct, we would not hesitate to declare it reversible error. Here, however, there is nothing whatever in the record but counsel's brief statements to indicate any departure. They are not self-proving. In such instances counsel may either ask for a recess and produce evidence, out of the presence of the jury, to substantiate specific objections or motions, or he may produce evidence in support thereof at the hearing on his motion for new trial. We have nothing to act upon here.

For the errors noted, the judgment is reversed and the cause remanded for a new trial.

All of the Judges concur.