STATE of Missouri, Plaintiff–Respondent,

v.

Diana MAGILL, Defendant–Appellant.

No. 16864.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 10, 1990.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 31, 1990.

---

**726**

Thad Burrows, Asst. Public Defender, Springfield, for defendant-appellant.

Thomas E. Mountjoy, Pros. Atty., Susan F. Colburn, Asst. Pros. Atty., Springfield, for plaintiff-respondent.

PARRISH, Presiding Judge.

Diana Magill (defendant) was convicted of assault in the third degree, a class A misdemeanor. § 565.070.1(1).[1] She was sentenced to confinement in the county jail for six months. §§ 558.011.1(5) and 560.-016.1(1). Execution of the sentence was suspended and defendant was placed on probation for a period of one year. This court affirms.

For purposes of appeal, the evidence tending to prove defendant's guilt, together with all inference to be reasonably drawn therefrom, is accepted as true. *State v. Poole*, 683 S.W.2d 326, 327 (Mo. App.1984). All contrary evidence and inference is disregarded. *Id.*

Defendant has a son, Zachary, from a prior marriage to James Magill. In May of 1988, at the time of the events that relate to the criminal charge that is the subject of this appeal, Zachary was in defendant's custody. Zachary was seven years old.

On May 25, 1988, James came from his home in Kansas City to defendant's home in Springfield to get Zachary for visitation. James was accompanied by a friend, William Renfrow. When James arrived, defendant stated, "Don't freak out about the bruises. I had to spank him." James took Zachary and returned to Kansas City. After arriving in Kansas City, James and his present wife, Cathleen, examined Zachary. They observed massive purple and yellow bruises on Zachary's legs and on his buttocks. William Renfrow also observed the bruises.

The following day a report was made to "the child abuse hotline."[2] In accordance with a suggestion made by the person who received the hotline call, Zachary was taken to a doctor for examination. Photographs were also made of the injuries. The doctor

---

1. References to statutes are to RSMo 1986.

2. § 210.145 directs the Missouri Division of Family Services to "establish and maintain a telephone service operating at all times, capable of receiving reports made pursuant to sections 210.110 to 210.165." § 210.145 requires that the agency "receive reports over a single, statewide toll free number." §§ 210.110 to 210.165 relate to incidents of child abuse.

to whom Zachary was taken examined Zachary by pulling the back of Zachary's trousers away from his body. The doctor noted bruises measuring 5½ × 6½ centimeters on Zachary's right buttock. He made no further visual examination of Zachary.

Defendant testified that she had spanked Zachary using a belt. Although she is right-handed, defendant used her left hand in administering the spanking for the reason that she had a cast on her right wrist and hand because of broken bones in that wrist and hand. She testified that she "swatted him five times." Zachary was undressed at the time he was spanked. He had just finished taking a bath, "and he was still a little bit wet." Defendant testified that she spanked Zachary to punish him for holding her younger son "under the water faucet." This case was tried before the trial court without a jury.

Defendant raises two points on appeal. She contends that the trial court erred in sustaining an objection to a question asked James on cross-examination as to whether he had ever been investigated for child abuse. She also complains that there was not sufficient evidence for the trial court to find her guilty, and she particularly complains that the trial court based its determination on a finding that "there was no other explanation for the bruises" other than that they were caused by defendant.

The evidentiary ruling about which defendant complains occurred during cross-examination of James Magill. The following question was asked by defendant's trial attorney: "Mr. Magill, have you ever been investigated for child abuse?" Thereupon, the assistant prosecuting attorney objected saying, "Your Honor, I'm going to object. It's improper impeachment." The trial judge sustained the objection. The defense attorney then sought leave of court to speak further. Defendant's attorney explained, "The defense is trying to establish that someone, other than Diana Magill, may have caused these injuries. And later evidence, we hope, will show that." The court again ruled, "Objection's sustained."

Thereafter, upon inquiry made by the assistant prosecuting attorney, James testified that he did not spank Zachary between the time he picked up Zachary at defendant's house and the time the police saw Zachary.

■ The state's objection to the question was that it constituted "improper impeachment." A question on cross-examination regarding whether a witness was the subject of an investigation unrelated to the case on trial is improper. *State v. Smith,* 585 S.W.2d 540, 541 (Mo.App.1979). The fact that a person who testifies is suspected of committing a crime or has even been arrested and charged with a crime cannot be used to impeach his credibility absent the witness having been convicted. *State v. Lockhart,* 507 S.W.2d 395, 396 (Mo.1974); *State v. Sanders,* 360 S.W.2d 722, 725 (Mo. 1962). The trial court committed no error by sustaining the objection.

■ No error was committed when the trial court again sustained the objection after the defense attorney tendered further explanation. The fact that defendant "hoped" to show that someone other than her caused these injuries did not render the question proper. Even if it is assumed that defendant intended to claim that James (or someone else) had an opportunity or motive to have committed the offense with which she was charged, the question is improper. "Evidence that another person had an opportunity or motive for committing the crime for which the defendant is on trial is not admissible absent proof that the other person committed some act directly connecting him with the crime." *State v. Woods,* 508 S.W.2d 297, 300 (Mo.App.1974). No evidence was presented that James or any other person committed any act connecting them with the infliction of the injury upon Zachary that was the basis of the criminal charge. Defendant's first point on appeal is denied.

■ Defendant's remaining point on appeal complains that the evidence was not sufficient to find her guilty. Specifically, defendant complains about one statement that is included in a notification sent by the trial court to two of the trial attorneys regarding the rendering of a decision in

this case. The statement about which defendant complains is from a letter addressed to one of the assistant prosecuting attorneys who represented the state and to one of the assistant public defenders who represented defendant. The letter is dated January 2, 1990. A copy of the letter is included in the legal file that is a part of the record on appeal in this court.

It is questionable, at best, that the letter in which the statement upon which defendant bases her second point on appeal constitutes "findings" of the trial court. The trial court's docket sheet, included in the legal file, does not show the filing of any formal findings by the trial court. The transcript does not reflect that any were dictated into the trial record. The copy of the letter does not show any stamp indicating that it was filed in the trial court's records.

The docket sheet and the trial transcript show that evidence was presented in two parts. The trial commenced December 6, 1989. Prior to resting, the state asked the trial court, "Your Honor, at this point in time, the State has one additional witness who is not available. And we would like to extend the proceedings to get a chance to get him down here for his testimony." After some discussion, the trial court continued the remainder of the trial to December 28, 1989. The case was reconvened on that date, the remainder of the evidence presented, and the notation made on the docket sheet, "Cause taken under advisement." On January 2, 1990, a docket entry was made stating, "Cause having been taken under advisement court now finds defendant guilty as charged. Costs to include $115.00 charge to Burrell Center Inc. PSI requested. Sentencing to be set within 7 days after receipt of PSI." On February 28, 1990, a formal "Judgment" was filed showing imposition of sentence and its suspended execution.

At most, the letter from which defendant quotes the "finding" about which she complains was correspondence between the trial court and trial counsel. It is apparent that it was not intended to be, nor was it, "findings" upon which defendant is entitled to claim trial court error. In passing, however, it is appropriate to note that the letter contains, in addition to the statement upon which defendant's second point on appeal is based, a summary of the testimony of each witness who testified at the trial. That summary is consistent with the contents of the trial transcript. This court has reviewed the complete transcript and has read the "letter" from the trial judge to trial counsel in its entirety. That review reveals that the finding of guilty is supported by substantial evidence. For that reason, the conviction should be affirmed. *State v. Isom,* 660 S.W.2d 739 (Mo.App. 1983). Defendant's second point on appeal is denied.

The judgment of conviction is affirmed.

FLANIGAN, C.J., and HOGAN, J., concur.