**STATE of Missouri, Respondent,**

v.

**Richard TODD, Appellant.**

**No. 56080.**

Supreme Court of Missouri,
Division No. 1.

June 28, 1971.

John C. Danforth, Atty. Gen., Kermit W. Almstedt, Asst. Atty. Gen., Jefferson City, for respondent.

Melvin D. Benitz, St. Charles, for appellant.

HOLMAN, Judge.

Defendant was charged with the offense of robbery in the first degree. See §§ 560.120 and 560.135.[1] The trial resulted in a verdict of guilty and the jury fixed defendant's punishment at imprisonment for a term of seven years. Defendant has appealed. We reverse and remand.

The evidence offered by the State disclosed that James R. Murphy was employed to work at night at the Skyview Truck Stop located about a mile west of Wentzville, Missouri. He testified that he ran the service station and also cleaned the restaurant; that about 1:40 a. m., on December 10, 1969, a car pulled up to the gas pumps and when he approached to offer service the driver pointed a shotgun out of the window and demanded money; that he told him the money was in the cash register and the key to the register was on his belt; that the two other men in the car got out, one of them took the key, and they went into the service station and obtained about $200 from the cash register; that the driver continued to point the gun at him while the robbery took place; that the

1. Statutory references are to RSMo 1969, V.A.M.S.

two men re-entered the car and they drove away.

The witness made a positive in-court identification of defendant as the driver of the car and the one who held the gun during the robbery. He testified that he called the Wentzville police and a police officer and a deputy sheriff arrived shortly thereafter and made an investigation; that he told the officers that the robbers were in a 1957 or 1958 Chevrolet, green with white top, and that the man who held the gun had dark hair and was "kind of short and heavy-set."

Upon cross-examination Mr. Murphy emphasized his identification of defendant as shown by the following: "Q What made you so sure that it was him? A I never will forget that face. Q Why do you say that? A When you see a face over a shotgun, sir, you don't forget it." Defendant also brought out on cross-examination that a policeman and deputy sheriff had brought defendant to the service station on the early morning of December 31, 1969; that Officer Johnson came in the restaurant where Murphy was working and told him that he had a man out in the car that he wanted him to look at; that he did look at the man and identified him as the man who held the gun.

The defendant offered evidence tending to prove an alibi in that he was in his apartment at Montgomery City with his family at the time of the robbery. He also called as a witness the deputy sheriff and a Wentzville policeman who testified concerning the arrest of the defendant on December 31. They stated that when they saw that defendant fit the description of one of the men who robbed the Skyview Station on December 10 they took him to the station to be observed by Mr. Murphy.

Defendant testified in the case and denied his guilt. He testified at some length concerning his occasion for being in Wentzville on December 31 and his arrest at that time. He stated that he was in St. Ann at that time and received word from his wife that their baby had been burned and he started to drive to Montgomery City in his Chevrolet car; that at Wentzville he developed engine trouble and turned off the highway onto a service road and then, because of snow and ice, his car slid into a ditch; that he walked across the field by the Wisk Plant to a telephone booth to call for help but did not have any change for the phone; that he then went to a man's door and tried to get help in towing his car and the man said he would call the police to help him. The police came and took him to the police station where they questioned him and told him they were going to book him on suspicion of burglary. (The police had reason to suspect that a burglary had just occurred at the Wisk Plant and they observed that defendant's tracks had gone near it.) Defendant further stated that he was then taken to the Truck Stop and viewed by a man there and was told that he would be booked for armed robbery.

■ The first point briefed by defendant is that the court erred in permitting the prosecuting attorney to cross-examine him concerning previous arrests. The transcript discloses that defendant, on direct examination, gave a long narrative concerning occurrences on the occasion when he was arrested and questioned by the officers on December 31, 1969. In the course of the narrative he stated that he was asked if he had been arrested before and he answered "Yes." When asked on what charges he said "Tickets or suspicion of burglary is all." Thereafter, on cross-examination (after appropriate objection by defendant had been overruled) the prosecuting attorney was permitted to question defendant as follows: "Q How many times have you been arrested since you reached the age of seventeen years? A I haven't counted them, sir. Q Were you arrested on April 7, 1960, for suspicion of burglary and larceny in Overland? A (No audible answer) Q Do you recall being arrested and a warrant issued for burglary in the second degree by the

St. Louis Police Department on May 12, 1960? A I was picked up on it but I never did— Q (Interrupting) You weren't convicted? A No, sir. Q Do you recall being arrested on August 14, 1960, by the St. Louis police and charged with suspicion of stealing? A No, sir. Q You don't recall that? A No. Q Do you recall that on July 3, 1960, you were arrested by the police in Dallas, Texas, for investigation? A Yes, sir. Q Do you remember that on July 5, 1962, you were charged with theft by the police of Dallas, Texas? A No. * * * Q Do you recall that on April 23, you were arrested by the St. John Police Department and charged with suspicion of burglary and larceny? A No, sir. Q Do you recall that on October 27, 1963, you were arrested by the St. Louis County police charged with burglary and stealing? A The county police picked me up every time they saw me for suspicion of burglary or something but they always asked me questions about the other fellow to see if I would tell anything. Q Do you recall being arrested on August 23, 1967, by the St. Louis police and charged with suspicion of burglary? A Yes, and it was false. Q Do you recall being arrested on November 21, 1967, by the St. Louis County Police Department and charged with suspicion of stealing over $50? A They found out it was false. Q Do you recall being arrested on February 10, 1968, by the St. Louis County Police Department and charged with burglary and stealing? A That was false. Q Do you recall that you were arrested on April 22, 1968, by the St. Louis County police and charged with burglary and stealing? A That was false. Q Do you recall that on May 11, 1968, you were arrested by the St. Louis County police and charged with burglary and stealing? A That was false. Q Do you recall that on July 24, 1968, you were arrested by the St. Louis County police and charged with burglary and stealing? A That was false. Q Do you recall that on July 25, 1968, you were arrested by the University City, Missouri, police, charged with burglary and stealing? A That was false. Q Do you recall that on September 8, 1968, you were arrested by the St. Louis County police and charged with suspicion of burglary and stealing? A That is what they have all been—suspicion. Q Do you recall that on March 17, 1969, a warrant was issued for improper—A (Interrupting) That was a frame-up."

The position of the State in regard to this contention is stated in its brief as follows: "It is axiomatic that to impeach a witness one may show prior convictions; not arrests. However, in the case at hand, the questioning by the state as to appellant's previous and numerous arrests was not for the purpose of impeachment since appellant himself admitted the arrests; but rather was to further clarify appellant's own volunteered statement that he 'had been (previously) arrested for suspicion of burglary.' As stated in § 546.260, RSMo 1969, the accused during cross-examination may be questioned 'as to any matter referred to in his examination in chief.' "

It is our view that the only possible relevance of that cross-examination would have been for purposes of impeachment. In that connection it will be seen that the Attorney General seeks to brush aside "the established rule that a witness' credibility may not be attacked by showing a mere arrest, investigation, or criminal charge which has not resulted in a conviction." State v. Sanders, Mo.Sup., 360 S.W.2d 722, 725. And, it is our view that a violation of that rule is particularly prejudicial when the witness is the defendant in a criminal case. In a similar situation this court long ago stated that "[q]uestions so clearly incompetent, so verging upon unfairness, and so hurtful withal ought not to be asked by any prosecuting attorney. It is the duty of this officer to see to it that the defendant shall have a fair and impartial trial, and that he shall not be convicted by incompetent evidence." State v. Duff, 253 Mo. 415, 161 S.W. 683, 684. See also, State v. Pine, 332 Mo. 314, 57 S.W.2d

1087[6]; State v. Hillebrand, 285 Mo. 290, 225 S.W. 1006[5]; State v. Spinks, 344 Mo. 105, 125 S.W.2d 60[5]; and State v. Rumfelt, Mo.Sup., 258 S.W.2d 619[2].

The fact that defendant made a brief voluntary reference to the subject of his arrests in his narrative testimony did not justify the flagrant violation of the rule above stated under the guise of explanatory cross-examination. We rule that the error under consideration was exceedingly prejudicial to defendant and for that reason the judgment of conviction must be reversed and the cause remanded for a new trial.

The defendant has also raised the point that the State did not make a submissible case, but a reference to our factual statement will show that there is no merit in that contention.

■ During his opening statement the prosecuting attorney, over objection, was permitted to read the information in the case. Defendant contends that such was error. This court has stated in a number of cases that it is the better practice in criminal cases not to read the information to the jury. See State v. Gilmore, 336 Mo. 784, 81 S.W.2d 431[3]; State v. Lamb, Mo.Sup., 239 S.W.2d 496[5]; and State v. Bohannon, 361 Mo. 380, 234 S.W.2d 793[5]. The reading of the information to the jury should not be permitted upon another trial.

A number of the points briefed on this appeal will not likely recur on another trial and need not be discussed. We will, however, briefly discuss contentions of error relating to the admission of evidence of identification. Prior to trial defendant filed a motion to suppress the testimony concerning the on-the-scene identification, which was heard and overruled. During the trial defendant objected to the in-court identification by Mr. Murphy, and such was overruled. Defendant cites such cases as United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

■ In the posture in which this case was tried we see no error in the admission of the evidence complained of. Although the motion to suppress was overruled the State did not offer evidence of the on-the-scene identification and hence we do not consider it necessary to review the ruling on that motion. In regard to the admission of the in-court identification it seems to us that there was ample evidence to support a finding that such identification was based on what the witness saw at the time the offense was committed and was not the result of the confrontation on December 31. There was ample artificial light at the time of the robbery and Mr. Murphy observed the man with the gun for several minutes. The impression on him was clearly shown by his testimony that "when you see a face over a shotgun, sir, you don't forget it." We think, however, that on another trial, if objection is made, the trial court should make an express finding as to whether the in-court identification was or was not based on a source independent of the confrontation on December 31. See State v. Williams, Mo.Sup., 448 S.W.2d 865; State v. DeLuca, Mo.Sup., 448 S.W.2d 869; and State v. Cannon, Mo.Sup., 465 S.W.2d 584.

Reversed and remanded.

All concur.