**STATE of Missouri, Respondent,**

v.

**Gary Vincent JOHNSON, Appellant.**

**No. 9556.**

Missouri Court of Appeals,
Springfield District.

April 4, 1975.

Arthur A. Benson II, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Karen I. Harper, Asst. Atty. Gen., Jefferson City, for respondent.

HOGAN, Judge.

Gary Vincent Johnson was convicted by a jury of the offense of robbery in the first degree by means of a dangerous and deadly weapon, as defined and denounced by §§ 560.120 and 560.135, RSMo 1969.[1] The Second Offender Act, § 556.280, was found to be applicable and defendant's punishment was assessed at a term of 99 years' imprisonment. On this appeal defendant raises, or attempts to raise, the following questions:

1. Did the trial court err in denying defendant's motion to suppress eyewitness identification testimony given by witness Edward Bond because the pretrial identification procedure used violated defendant's right to due process?

2. Did the trial court err in admitting testimony corroborating witness Fred Coleman's extrajudicial identification of the defendant?

3. Was the defendant penalized for exercising his right to a jury trial?

4. Did the trial court err in denying defendant a change of venue because of the bias and prejudice of the inhabitants of the 29th Judicial Circuit?

5. Did the trial court erroneously limit defendant's voir dire examination of the jury panel?

6. Did the trial judge erroneously fail to disqualify himself upon defendant's motion?

Answering each question properly raised in the negative, we affirm the judgment below.

Defendant's conviction arose out of the robbery of the Paddock State Line Liquor Store, located adjacent to the Kansas border in Jasper County. About 11:00 p. m. on October 9, 1971, Edward Bond and Fred Coleman, employees of the store, were engaged in totaling the day's receipts. Two men, later identified as the defendant and

his brother, entered the store. Defendant approached the counter; his brother remained near the entrance. Coleman was busy counting money and Bond waited on the defendant. Defendant ordered whiskey and a chaser, and asked Bond to compute the amount due. Defendant was "right up at the counter", "about three feet" from Bond. When Bond "looked up" after making his calculations, defendant had drawn a handgun and was pointing it at Bond's chest. Defendant then announced, "This is a stick-up, get em up." This statement focused Coleman's attention upon the defendant, and both employees immediately "got em up."

Defendant then told Bond and Coleman that he wanted "all the paper money" and "the money in your billfold, too". Coleman, an experienced employee, carried no money when he was working at night, but Bond had cashed his paycheck. Bond laid the currency from the cash register and his own $46 on the counter. Defendant picked up the money, handed it to his brother, and ordered Bond and Coleman to lie supine near the entrance to the door. They did so. Defendant's accomplice left the store to see if the two could leave without being observed. Before leaving, defendant told Bond and Coleman that they were to be quiet, that he could "still shoot [them] through the window". Defendant then opened the entrance door "a crack" and asked his confederate, "[A]re you ready Jack?" Both men then left and drove off toward Galena, Kansas.

During the trial, it was brought out that Bond and Coleman were standing side by side when the defendant drew his weapon and announced his criminal purpose; neither defendant nor his brother wore a mask; Bond and Coleman had five to seven or eight minutes to observe the robbers, and Coleman "looked [defendant] right in the eye" during the whole time. The only indication that either Bond or Coleman's faculties of observation were in any way,

---

1. All references to statutes and rules are to RSMo 1969, V.A.M.S. and V.A.M.R.

impaired appears in Coleman's testimony that Bond "was extremely nervous" during the robbery.

██ The defendant vigorously asserts that Bond's in-court identification testimony was tainted by impermissibly suggestive pretrial identification procedures and should have been excluded on his motion to suppress. We have examined the record and have considered this contention in light of the criteria laid down in State v. Boothe, 485 S.W.2d 11, 13 [1, 2] (Mo. banc 1972), and State v. Parker, 458 S.W. 2d 241, 243–244 [1, 2] (Mo.1970), but extended discussion of the point is unnecessary. The in-court identification testimony, at least, was admissible if the State was able to show a basis for this testimony independent of the pretrial identification procedures. State v. Ramsey, 477 S.W.2d 88, 90 [2] (Mo.1972); State v. Johnson, 457 S.W.2d 762, 764–765 [2] (Mo.1970). In this case the witness had an ample opportunity to observe the defendant while the robbery was taking place. Considering the evidence heard on the motion to suppress and that offered at the trial, it appears that Bond had the defendant under direct observation for a period of seven or eight minutes while the robbery was taking place; defendant wore no nylon stocking, ski mask or other disguise over his face, and if Bond was "extremely nervous" during the robbery, there is no indication he was so frightened he could not make accurate observations. In addition, at the hearing on the motion, Bond repeatedly asserted that his identification of the defendant was based on what he had observed at the time of the robbery. In the circumstances, the trial court properly found that Bond's identification testimony was based on what he saw at the time the offense was committed, and there was no error in denying the motion to suppress. State v. McIntosh, 492 S.W.2d 843, 846 (Mo.1973); State v. Todd, 468 S.W.2d 632, 635 [3] (Mo. 1971).

The defendant argues that the trial court erred in permitting Deputy Sheriff Charles Whitlow to testify that Coleman had identified the defendant in a lineup. He relies primarily on State v. Degraffenreid, 477 S.W.2d 57, 62–64 [12] (Mo. banc 1972), to sustain this claim of error. The only objection made to any of Whitlow's testimony was that it was "repetitious, not the best evidence". This objection was made before the State had propounded any questions concerning Coleman's identification of the defendant in the lineup. When Whitlow was asked, "[D]o you recall if [Coleman] made any identification, that is if he picked out anybody in that line-up?", he was permitted to answer affirmatively without objection, and he was further permitted to testify without objection that Coleman "pick[ed] out" the defendant. Appellant's motion for new trial assigned 11 grounds of error, but no error was asserted with respect to Whitlow's testimony. A motion to enlarge time and amend the motion for new trial was later filed on defendant's behalf in which it was asserted that the admission of Whitlow's testimony was "cummulative [sic], repetitious, and prejudicial". The State argues that the amendment was untimely; the defendant cites us to present Rule 44.01(a) and insists that his amended motion was timely filed.

The verdict in this cause was received March 20, 1972. Time for filing motion for new trial was extended to May 3. That order would have granted defendant 44 days to file his motion. The trial court quickly recomputed the time and on March 21 shortened the period to April 27, 1972, which allowed 38 days. Defendant's motion to enlarge time was, he insists, mailed from Kansas City "the 27th or 28th" of April. On oral argument, the trial court, doubting his authority to do so, extended the time to amend the motion to May 1, 1972.

██ Rule 27.20 requires that a motion for new trial in a criminal case be filed within 10 days after reception of the verdict. It also provides that upon application of the defendant, the trial court may extend

that time for an additional 30 days. The computation of time is governed by Rule 31.01, not Rule 44.01(a). The fortieth day fell on Saturday, April 29. The motion was not filed when it was mailed; it was not to be considered filed until it was lodged in the clerk's office. Ely v. Parsons, 399 S.W. 2d 613, 619 (Mo.App.1966); Byers v. Zus- pann, 257 S.W.2d 384, 387–388 [2] (Mo. App.1953). The "supplemental" motion was stamped May 1, 1972. This was the forty-second day, the amended or supple- mental motion was untimely, and we may not consider it. State v. Tucker, 451 S.W. 2d 91, 92 [1–3] (Mo.1970); State v. Loyd, 233 S.W.2d 658, 659 [3] (Mo.1950). In this case, we are dealing with a factual situation much different from the one pre- sented in *Degraffenreid*, supra, and we are in doubt that the rationale of that case ap- plies here; in any event, the point has not been properly preserved and is not before us. State v. Gant, 490 S.W.2d 46, 49–50 [8] (Mo.1973).

Defendant further argues that he was unconstitutionally penalized for exercising his right to a jury trial. In this connection he dwells on the supposed evils of plea bargaining, and cites us to North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and authority from other jurisdictions. His complaint is based on the following record facts: At the time he filed the amended or supplemental mo- tion for new trial, defendant's counsel filed an affidavit in which he stated that on Friday, March 17, 1972, he asked the prosecuting attorney what punishment the State would recommend if defendant en- tered a plea of guilty to two charges then pending against the defendant in Jasper County. Counsel was told, according to the affidavit, that if defendant entered a plea of guilty to the charge of armed robbery and to an assault charge also pending, the State would recommend 35 years imprison- ment for armed robbery and 15 years impri- sonment for assault. If defendant elected to stand trial, the State advised counsel for

the defendant that a 99-year sentence would be recommended if defendant were found guilty. As indicated, defendant was found guilty and was sentenced to 99 years im- prisonment.

■ Upon review of the record, we are satisfied there is no merit to this claim of error. Taken as true, defendant's af- fidavit indicates only that defendant's counsel initiated a plea bargaining discus- sion with the prosecution. There is no indication whatever that the trial court relied on the State's recommendation in imposing the sentence; what the transcript shows affirmatively is that the trial court carefully considered defendant's prior con- viction for a similar crime; defendant's counsel was invited to present any mitigat- ing factors and failed to do so. Each case requires an individualized sentencing proce- dure, and if the sentence is severe, no error of constitutional dimension appears in its imposition. See United States v. Marzette, 485 F.2d 207 [1, 2] (8th Cir. 1973); State v. Smith, 445 S.W.2d 326, 331–332 [5] [6, 7] (Mo.1969).

■ The defendant's three final as- signments of error may be considered together. Defendant asserts 1) that his motion or application for a change of venue from the 29th Judicial Circuit was improperly denied; 2) that his voir dire examination of the jury panel was unduly limited, and 3) that the trial court errone- ously refused to disqualify itself upon de- fendant's motion. The application for change of venue and the extent of the voir dire examination were, in the circumstances of this case, matters addressed to the dis- cretion of the trial court, and no abuse of discretion is demonstrated. The motion to disqualify the trial judge was made orally by the defendant himself after the motion to suppress had been heard and evidence on the application for a change of venue had been heard. No notice was given. The

trial court did not err in denying the motion. State v. Thost, 328 S.W.2d 36, 39 [5] (Mo. 1959).

The judgment is affirmed.

BILLINGS, C. J., and STONE and TITUS, JJ., concur.

FLANIGAN, J., not participating because not a member of the court when the cause was submitted