STATE of Missouri, Plaintiff-Respondent,

v.

Nicholas Paul CONNELL, Defendant-Appellant.

No. 36019.

Missouri Court of Appeals,
St. Louis District,
Division Three.

April 29, 1975.

James C. Jones, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Philip M. Koppe, Asst. Attys. Gen., Jefferson City for plaintiff-respondent.

McMILLIAN, Judge.

Defendant appeals from a judgment of conviction entered by the Circuit Court of St. Louis City on a jury verdict, finding him guilty of attempted burglary, second degree, § 560.070, RSMo 1969, V.A.M.S. Pursuant to § 556.280(1), RSMo 1969, the court sentenced defendant to serve four years in the custody of the Department of Corrections.

For reversal of the judgment of conviction, defendant alleges that the court erred as follows: (1) in denying his request to limit the prosecution inquiries on cross-examination of him pertaining to his arrest record prior to his conviction; (2) in refusing to submit defendant's request instruction (MAI-CR No. 2.10 Modified) and giving its own instruction (MAI-CR No. 2.10); (3) in giving a flight instruction; (4) in failing to declare a mistrial because of comments made by the prosecutor in final argument; and (5) in refusing at defendant's request, to submit certain exhibits to the jury during their deliberation. For reasons contained herein, we affirm.

Since the defendant does not question the sufficiency of the evidence, we set forth only a brief narrative of the evidence.

Early on the evening of May 17, 1973, Mr. Lloyd G. Holst, owner of a radiator shop in south St. Louis, locked up his premises and left for the day. At or about 2:00 A.M., the following morning, Mr. Glenn Chapman, a neighbor who lived across the street, heard a door slam. Upon looking out his front window, he saw two men in front of Holst's radiator shop, one attempting to pry open the door and the other standing in the driveway. Within five to ten minutes after Mrs. Chapman called the police, two police cars arrived. One went to the back and the other to the front. One man, later identified by Mr. Chapman as the defendant, ran toward the Chapman home, and the other ran on Morganford Road. According to Mr. Chapman the man who ran toward him was the person who was trying to pry open the door; that defendant wore a tan jacket and that as defendant ran through a gangway, he was pursued by Officer Guelker.

Officer Jerry Hill who responded to the telephone call, testified that as he was talking to Mr. Chapman, he heard the sound of a fence breaking and thereafter he ran down the gangway, where he saw defendant jump over a fence. According to Officer Hill's testimony at the time defendant was arrested, defendant had a crowbar in his hands and was breathing very heavily; that at the time defendant was taken into custody he was wearing a colored shirt and tan pants; and that neither any other clothes nor any other suspect was found.

Defendant's evidence tended to show that as he walked down Morganford Road, he saw a police car pull around the corner and a man yelling from a porch; that he ran into a gangway two or three houses up Morganford Road and across from the radiator shop; that he was never in Chapman's yard; that he ran to avoid being arrested. Defendant admitted a prior conviction and that he had been arrested fifteen·times subsequent to his conviction, which he considered harassment.

On direct examination defendant testified freely to about fifteen arrests subsequent to his prior conviction; he claimed that the arrests showed a pattern of police harassment and his testimony on this issue was offered to explain why he ran when he saw the police officer approach. On cross-examination, the state, over defendant's objections, showed that even prior to

his conviction defendant had been arrested on numerous occasions.

■ To support his allegation of error, defendant cites State v. Sanders, 360 S.W.2d 722 (Mo.1962); State v. Todd, 468 S.W.2d 632 (Mo.1971) and State v. Rumfelt, 258 S.W.2d 619 (Mo.1953). We do not quarrel with the rule of law decided in either *Sanders* or *Rumfelt.* The general rule is that evidence of prior arrest may not be used to attack a witness's credibility, State v. Taylor, 498 S.W.2d 614 (Mo.App.1973). But, there are exceptions to this rule, one of which was applied in State v. Elbert, 471 S.W.2d 170 (Mo.1971). In *Elbert,* the defendant testified during his direct examination that he had been caught smoking marijuana. On cross-examination he testified that he had other prior arrests, including specifically, gambling and peace disturbance. Our Supreme Court held: ". . . pursuant to § 546.260, RSMo 1969, V.A.M.S., an accused during cross-examination may be questioned as to any matter referred to in his examination in chief, and this is particularly so when the purpose is to show his trustworthiness and credibility as a witness in his own behalf . . ." Id. at 172.

In State v. Todd, supra, the court carved out a qualification on the exception contained in the *Elbert* case. In *Todd,* defendant testified on direct examination that he had once been arrested for suspicion of burglary. On cross-examination, the prosecutor questioned him about fifteen previous arrests. The court held: "The fact that defendant made a brief voluntary reference to the subject of his arrests in his narrative testimony did not justify the flagrant violation of the rule above stated under the guise of explanatory cross-examination. We rule that the error under consideration was exceedingly prejudicial to defendant and for that reason the judgment of conviction must be reversed . . . for a new trial." Here, defendant's testimony about his previous arrests, on direct examination, was no mere, isolated, brief, passing reference to "harassment" in the midst of a long narrative comparable to the situation in the *Todd* case. In fact, as defendant's counsel concedes, defendant injected his prior arrests into evidence in order to explain his fear of the police.

In State v. Scown, 312 S.W.2d 782 (Mo. 1958), the court noted that, "In sundry cases our courts have said that the state is not confined to a 'categorical review' of the matters covered or stated in the direct examination of a defendant, but that the cross-examination may cover all matters within the fair purview of the direct examination . . ." Nor should a defendant be permitted to take the stand and by confining his answers to ". . . 'one or two well-prepared interrogatories sweep away the whole structure of the state's case, and then remain immune from a cross-examination on the issue thus tendered' . . ." State v. Hartell, 293 S.W.2d 313, 317 (Mo.1956). In State v. Christian, 245 S.W.2d 895, 899 (Mo.1952), the court said, ". . . 'The "matter referred to in his examination in chief" means the things he testifies about. . . . If the defendant in chief in a general way refers to a subject, he may be examined in detail as to that subject. Where he states a fact in relation to his actions, the prosecutor may inquire as to particular circumstances which would throw light on that fact,' State v. Ayres, 314 Mo. 574, 285 S.W. 997, 998 . . ."

■ In the present case, defendant tendered the issue about his prior arrests and opened up the issue of police harassment, but sought to confine the inquiry only to those arrests which occurred subsequent to his 1971 conviction for burglary. To refute the claim of police harassment the prosecutor cross-examined the defendant about his arrest record prior to his conviction. To allow defendant to tender the issue of his arrests to show police harassment and to deny the state to put the issue in its proper context, would have the effect of immunizing the defendant from cross-

examination on an issue which he raised on his direct examination. This, we refuse to do and, therefore, defendant's claim of error on this point is denied.

■■ For defendant's second claim of error, he contends that since the state's evidence showed him to be the actual perpetrator of the attempted burglary, the court erred in giving an instruction based upon his being an aider and abettor. Stated another way, defendant asserts that the state proceeded against him as a principal and that all the evidence shows him to be a principal. Consequently, it was impermissible for the state to have the jury consider him as an aider or abettor. We note that the amended information charged defendant with "acting" with another party in committing the attempted burglary. We also note that the legal consequences of being an aider or abettor are the same as those for being a principal, § 556.170, RSMo 1969; State v. Garton, 371 S.W.2d 283, 289 (Mo.1963). In State v. Gilliam, 351 S.W.2d 723 (Mo.1961), the court, in dealing with a similar factual situation, where there were two gunmen and one lookout, and defendant was identified as the gunman, noted that a similar instruction as given herein was not reversibly erroneous. Thus we rule that it is not error to instruct the jury that persons are equally guilty who act together in the commission of a crime, where evidence of joint action is present; although the evidence tends to prove that the defendant was the chief actor in the crime. See State v. Lunsford, 331 S.W.2d 538 (Mo.1960); State v. Price, 362 S.W.2d 608 (Mo.1962), cert. denied 374 U.S. 811, 83 S.Ct. 1702, 10 L.Ed.2d 1034 (1963).

Next, we take up defendant's claims that the court erred (1) in giving a "flight" instruction where the court had already given an instruction on circumstantial evidence; and (2) in giving a flight instruction that permitted the jury to consider that defendant fled to avoid arrest for a crime other than the one charged in the amended information.

As we understand defendant's argument, he does not claim that it was impermissible for the court to give an instruction on flight, but he is requesting us to reverse the long-standing rule that a "flight" instruction may be given whenever warranted by the evidence. Supportive of his contentions, he sets forth three factors, which he claims support such a change in the law at this time: (1) the fact that a general "circumstantial evidence" instruction gives adequate guidance to the jury; (2) the sound principle that it is error for the court to submit instructions which single out evidence unfavorable to the defendant and thereby afford such evidence undue prominence; and (3) the recent adoption of MAI-CR indicating the Supreme Court's desire to standardize and to simplify criminal instructions.

Our Supreme Court has long held that a "flight" instruction is proper and is not a comment on the evidence. State v. Jordan, 306 Mo. 3, 268 S.W. 64, 70 (Banc 1924); State v. Meininger, 306 Mo. 675, 268 S.W. 71, 76–77 (1925); State v. Bryant, 361 Mo. 318, 234 S.W.2d 584, 586 (1950); State v. Coleman, 441 S.W.2d 46, 53 (Mo.1969). See State v. Hudson, 491 S.W.2d 1, 3 (Mo.App.1973).

■■ Although the Supreme Court on January 13, 1975, directed that after March 1, 1975, no "so-called flight or counter-flight instruction may be given," this explanatory note on flight is not retroactive. In approving and adopting some instructions in MAI-CR, we do not believe the Supreme Court intended to abolish others until specifically so provided. Rule 20.01 provides, "Approval of pattern instructions to juries . . . will be made from time to time by order of this Court." The MAI-CR is necessarily incomplete and, until new and approved instructions are adopted by our Supreme Court, other instructions not contained therein still obtain. MAI-CR

comments on the MAI-CR Section labeled "Instructions Never Given" reinforces our belief that flight instructions were not banned retroactively, since

> "Some of these (instructions) *will be* gathered together in the 5.00 Series, there to be quarantined and barred from *further* use." (Emphasis added.) MAI-CR Comments at 13.

■ At the time of trial, the instruction was a proper one. We decline to reverse in this case the Supreme Court's long-standing rule that a flight instruction may be given whenever warranted by the evidence.

■ Defendant's second complaint pertaining to the instruction on flight is that the first reference to "an offense" was prejudicial because it may have led the jury to conclude that they could consider evidence that he fled to avoid arrest for *any offense* which he may have committed.

> " 'The Court instructs the jury that if you find and believe from the evidence that the defendant immediately or shortly after the incident described in the evidence fled for the purpose of avoiding arrest by the officers of the law and trial for *an offense,* if you find *an offense* was committed at the time in question, then, such flight, if you find he did so flee, is a circumstance which may be taken into consideration by you in connection with all the other facts and circumstances in the case, in determining his guilt or innocence of the charge brought against him.' " (Emphasis added.)

As we understand the instruction, the second reference to "an offense" in the clause following the first reference precludes a finding of prejudice. Because the phrase, " . . . an offense was committed at the time in question . . . " qualifies the first reference to "an offense" by referring to the crime for which defendant was on trial. So, we find this claim to be without merit.

During the closing argument made by the prosecutor, two incidents arose which are somewhat troublesome for us. Neither Officer Guelker nor Morris was called upon to testify. But during the prosecutor's final argument, over objection, he argued, "I know Officer Guelker and Officer Mason (sic) were involved. We can bring them from off the street, out from doing their jobs, but they're going to come in and say what the other parties said. . . . Suppose ten officers see something. Do you have to bring all ten in? These two men are out fighting crime. . . . "

■ Although defendant's counsel made an objection to these lines of argument, he neither asked for a mistrial nor assigned the failure to declare a mistrial as error in his motion for a new trial. Rule 27.20, V.A.M.R. Thus, we review both points under our "plain error" rule, Rule 27.20 (c).

■ Granting of a mistrial is a drastic remedy which should be employed when no relief can remove the prejudice of an improper argument, State v. Goff, 490 S.W. 2d 88 (Mo.1973). And, it is, of course, as argued herein, improper for the prosecutor to argue matters not in evidence, or testimony that the court has excluded, State v. White, 440 S.W.2d 457, 460 (Mo.1969). Whether the remarks of counsel are improper, and whether improper remarks are prejudicial under the facts and circumstances of a particular case so as to necessitate a reprimand of counsel or discharge of the jury are matters resting largely within the trial court's discretion and an appellate court will not interfere unless the record shows an abuse of such discretion to defendant's prejudice, State v. Chester, 445 S.W.2d 393, 399 (Mo.App.1969). We neither condone the arguments made by counsel nor approve the fact that defendant's objections were overruled. Yet, as noted by the United States Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), " . . . arguments, like all closing argu-

**138**

ments of counsel, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."

In our case, the statement made by the prosecutor indicated that Guelker's and Mason's (Morris) testimony would substantiate evidence that was already before the jury. Yet, not unlike *Donnelly*, the trial court instructed the jury that the closing arguments would be "intended to help you in understanding the evidence and applying the law, *but they were not evidence.*" (Emphasis supplied.) Additionally, we rule that the state's case against the defendant had a significant mitigating effect on any prejudicial error that occurred during the prosecutor's final argument. That is, the strength of the state's case is significant in determining if the alleged error was prejudicial. Gresham v. United States, 374 F.2d 389 (8th Cir. 1967); State v. Forrester, 63 Mo.App. 530 (1895); State v. Pratt, 98 Mo. 482, 11 S.W. 977 (1889). Here, defendant left his girl friend's car near the scene of the attempted burglary. At approximately the same time, two men were seen trying to break into Holst's Radiator Shop with something wider than a screwdriver. One of the two men ran toward the witness Chapman (within six feet) with a crowbar in his hand when the police arrived. Within three or four minutes, Officer Hill arrested defendant with a crowbar in his hand. Because of the overwhelming evidence against the defendant and the cautionary instruction given by the court, we find that no manifest injustice or miscarriage of justice has resulted; therefore, we rule this allegation of error against defendant.

Finally, we consider defendant's alleged claim of error pertaining to the court's refusal to permit three of defendant's exhibits to be taken to the jury room. Exhibits A and B were portions of the transcript of the preliminary hearing, and Exhibit C, defendant's shirt worn at the time of his arrest. Under Missouri law, a jury may not, as a matter of right, take exhibits into the jury room; whether a jury may do so is within the sound discretion of the trial court, State v. Arrington, 375 S.W.2d 186 (Mo.1964). So, the issue here is whether the trial court abused its discretion in denying defendant's request to allow the jury to take the said exhibits to the jury room. We find no such abuse because the trial court's action was neither an untenable act nor clearly against reason that worked an injustice. See State v. Stubenrouch, 499 S.W.2d 824, 826 (Mo. App.1973).

Judgment affirmed.

SIMEONE, P. J., and GUNN, J., concur.