**STATE of Missouri,
Plaintiff-Respondent,**

v.

**John Edward BALL,
Defendant-Appellant.**

**No. 42497.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 14, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

Shaw, Howlett & Schwartz, James J. Knappenberger, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

DOWD, Judge.

Defendant-appellant, John Edward Ball, was convicted by a jury of first degree

robbery in violation of § 569.020 RSMo 1978. Sentence was assessed by the jury and imposed by the trial court at twenty-seven years imprisonment. Defendant appeals. We affirm.

The charge against defendant arose out of the robbery of a Clark gas station located in St. Louis County, Missouri. On March 12, 1979, at approximately 7:30 p. m., police officer John Kling drove past the Clark gas station and observed a man standing on the sidewalk next to the gas station. Kling stopped to talk with this man. The man identified himself as James Allen and produced a social security card bearing that name. The man said he was on his way home, and Kling did not detain him further. Kling subsequently identified defendant as the man he talked with on this evening.

John Meatte was the only employee working at the Clark gas station on the evening of March 12, 1979. He observed a man, whom he subsequently identified as defendant, walk up to the window of the gas station building. After the man pointed to a soda machine, Meatte opened the door and invited the man inside. The man initially asked for change for one dollar. He then pulled a .44 or .45 caliber revolver out of his coat pocket and told Meatte to "[b]e cool." Meatte then gave the man the gas station's money. After the man left the station Meatte notified police. On March 21, 1979, Meatte was shown photographs of five individuals and identified defendant's photograph as the man who robbed him. Later on this same day, Meatte selected defendant from a lineup consisting of five individuals. At trial defendant presented alibi testimony by seven witnesses, including his mother and three sisters, that he was attending a birthday party at the time of the robbery.

Defendant has raised nine points of alleged error on this appeal. He first contends the trial court erred in permitting the assistant prosecuting attorney to ask two questions during voir dire which allegedly were improper, inflammatory and prejudicial. During voir dire, one venirewoman indicated she might have difficulty as a juror "in this type of case." After further examination, it was established that the venirewoman had been the victim of an armed robbery some eight or nine years ago. The prosecutor eventually asked the following question: "Let me ask you this: I assume—well, this wasn't the man who robbed you, is that correct?"[1] Defendant's objection and request for a mistrial were overruled by the trial court.

■■■ One of the purposes of voir dire examination is to ferret out any bias or prejudice on the part of potential jurors.

---

1. The first challenged question arose during the following exchange:

"MR. BARRY [Assistant prosecuting attorney]: You've had this kind of experience before?
VENIREWOMAN: (Nodded head)
MR. BARRY: Have you ever been robbed?
VENIREWOMAN: Yeah.
MR. BARRY: And it's an unpleasant experience, and I don't want to dredge it up, but I've kind of got to ask you these questions now. How long ago was it?
VENIREWOMAN: It's been a quite—it's been about nine years or eight.
MR. BARRY: Were you robbed at gunpoint?
VENIREWOMAN: Yes.
    *    *    *    *    *    *
MR. BARRY: And do you know if anyone was ever apprehended?
VENIREWOMAN: We never heard.
MR. BARRY: Okay. Would that give you any anger at the system if no one was apprehended?

VENIREWOMAN: Not at the system.
MR. BARRY: Let me ask you this: I assume—well, this wasn't the man who robbed you, is that correct?
VENIREWOMAN: Oh, I have no idea. I don't believe so.
    *    *    *    *    *    *
MR. BARRY: [W]hat I'm trying to get at is do you realize this is an entirely separate case?
VENIREWOMAN: Yeah, I do.
    *    *    *    *    *    *
MR. BARRY: So the central question is this: If you're selected to be a juror, okay, became a juror, would you be able to fairly and impartially judge the facts, listen to the evidence and not make a decision until you'd heard all the evidence and not let the memory of your prior experience enter into that decision?
VENIREWOMAN: I'll try."

*State v. Ward,* 569 S.W.2d 341, 344 (Mo. App. 1978). The trial court is vested with broad discretion in controlling voir dire examination, including the nature and extent of specific questions. On appeal, the exercise of the trial court's discretion will be disturbed only when the record shows a manifest abuse of that discretion. *State v. Lumsden,* 589 S.W.2d 226, 229 (Mo.banc 1979) *cert. denied* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980); *State v. Sempsrott,* 587 S.W.2d 630, 635 (Mo.App. 1979). We find no abuse of discretion in permitting the above question. Viewed in context, the question was directed at determining whether the venirewoman could be fair and impartial toward the defendant, who was on trial for armed robbery, in light of the fact that she had been the victim of an armed robbery several years earlier.

■ The second challenged question occurred after a discussion by the prosecutor concerning how the concepts of good and evil are portrayed to children. Essentially, the prosecutor stated that good is represented by something beautiful and evil by something ugly. The prosecutor then asked the following: "Is there anyone here who's going to make a judgment or who expects evil—this man's appearance to look a particular way? Is there anyone here who still believes in those childhood depictions?" Again viewing the question in context, the prosecutor sought to learn whether anyone on the panel would judge the defendant on his appearance. We fail to see how this question would be inflammatory, and it certainly did not reflect on defendant's character. There was no error in permitting the question.

■ Defendant next contends the trial court erred in permitting the prosecutor to explain the burden of proof to the jury during voir dire because such an effort constituted an improper instruction on the law. The prosecutor stated, "Do you all realize that the State of Missouri has the burden of proof in this area?" Defendant's objection to any questions about the burden of proof was overruled, and the prosecutor continued: "The State has the burden of proof.

In other words, we have the burden of proving Mr. Ball guilty .... And the burden, the particular burden that we have to satisfy you with is that beyond a reasonable doubt. ... You know, I didn't say beyond any and all doubt. I said beyond a reasonable doubt. Do you all realize that that's more than just a slight doubt? Does anyone have any problem with that? (No response). That the phrase of beyond a shadow of a doubt is meaningless in the law. You all realize that?"

■ It is not the prerogative of counsel to inform the jury as to the law. *State v. Smith,* 422 S.W.2d 50, 68 (Mo.banc 1967). It is improper for counsel to attempt to define "reasonable doubt." *State v. Van,* 543 S.W.2d 827, 830 (Mo.App. 1976); *State v. Sanders,* 541 S.W.2d 782, 784 (Mo.App. 1976); *State v. Sanders,* 539 S.W.2d 458, 464 (Mo.App. 1976); *State v. Belleville,* 530 S.W.2d 392, 395 (Mo.App. 1975). *See State v. Burnfin,* 606 S.W.2d 629, 631 (Mo. 1980). It is not error, however, for counsel to merely discuss reasonable doubt without defining it. *State v. Simmons,* 602 S.W.2d 13, 16 (Mo.App. 1980); *State v. Hammond,* 578 S.W.2d 288, 290 (Mo.App. 1979); *State v. Wilbon,* 561 S.W.2d 133, 134 (Mo.App. 1978). The state asserts that the prosecutor's comments regarding a "slight doubt" and a "shadow of a doubt," while improper, were harmless and nonprejudicial. We agree that such comments do not constitute prejudicial error. The prosecutor's statements which indicated that reasonable doubt was not "beyond any and all doubt" or "slight doubt" or "beyond a shadow of a doubt" were not legally incorrect. *See State v. Henderson,* 547 S.W.2d 141, 143–144 (Mo.App. 1976). Although we condemn the practice and admonish all prosecutors and defense counsel not to inform the jury what the law is or what counsel believes the law to be, we find nothing in the remarks which might have injured defendant's cause or prejudiced his case. Defendant's second point is denied.

■ Defendant next contends that several comments by the prosecutor during trial constituted references to his right not

to testify. The fifth amendment of the United States Constitution and Article I, § 19 of the Missouri Constitution prohibit comment on an accused's failure to testify in a criminal trial. The ultimate test of whether the prosecutor commented on the accused's failure to testify is whether the jury's attention was called to the fact that the accused did not testify. *State v. McCall*, 602 S.W.2d 702, 705 (Mo.App. 1980).

The first challenged statement occurred during voir dire when the prosecutor stated: "Now, it's obvious that those of you who were selected as jurors in the case are going to be put in the position of sitting in judgment of another person; namely, the defendant. But also of all the witnesses in the case that will testify for the State." Clearly this was not a comment on defendant's failure to testify or his right to remain silent. The prosecutor was merely informing the jury panel of what their role would be as jurors. The reference to testifying was directed at the state's witnesses and not defendant. Nor would the remarks have the effect of compelling defendant to testify or induce him to remain silent. The prosecutor did not inform the jury that the defendant could testify on his own behalf or could refuse to testify if he so chose. *Cf. State v. Lindsey*, 578 S.W.2d 903 (Mo.banc 1978) which held that it was prejudicial error when the prosecutor stated during voir dire: "Mr. Lindsey doesn't have to go forward with any evidence if he doesn't wish to. He doesn't have to take the stand if he doesn't want to—."

Nor do we find any error in the remaining two challenged statements. During cross-examination of a defense witness, who was testifying about a party that defendant allegedly attended at the time of the robbery, the prosecutor asked, "Are any of the other people that were there that night here today that you know of?" Following defense counsel's relevancy objection, the prosecutor stated, "He has all these people endorsed." During closing argument the prosecutor stated the following: "Now he's just sitting here a desperate man because he absolutely knows what we're almost totally sure of: He was the man who robbed John Meatte." These statements were not of such a nature that we can say the jury's attention was called to the fact that defendant did not testify at trial. This point is denied.

■ Defendant's fourth contention is once again directed to certain statements made by the prosecuting attorney. During closing argument the following exchange occurred:

"MR. BARRY: Consider all these things when you consider reasonable doubt. Why does a man plead not guilty? Because he's not guilty? I submit to you, no. A man—

MR. KNAPPENBERGER [Defense counsel]: Judge, I object to that last remark.

\*     \*     \*     \*     \*     \*

THE COURT: Well, I think that's a proper argument for the prosecutor to make. It's his argument that the mere fact that the defendant has pled not guilty, he's going to argue that doesn't mean that he's not guilty. I think that's a proper argument. I overrule the defendant's objection.

\*     \*     \*     \*     \*     \*

MR. BARRY: I'll submit to you that a man in this room has pled not guilty, not because he's not guilty—

\*     \*     \*     \*     \*     \*

—But because he doesn't want to go to prison."

■ Defendant argues that these statements were improper because they were not supported by any evidence or inferences from the evidence adduced at trial. Defendant correctly asserts that it is improper for a prosecutor to argue matters not in evidence. *State v. Connell*, 523 S.W.2d 132, 137 (Mo.App. 1975). The prosecutor may, however, comment in closing argument on matters in evidence, and may draw inferences from the evidence which he in good faith believes to be justified. *State v. Brewer*, 565 S.W.2d 801, 803 (Mo.App. 1978); *State v. Smith*, 527 S.W.2d 731, 733

(Mo.App. 1975). In closing argument the prosecutor may also draw non-evidentiary conclusions which are justified by inferences from the evidence. *State v. Burroughs*, 559 S.W.2d 42, 43 (Mo.App. 1977). From the state's viewpoint, the evidence developed at trial indicated that defendant was guilty of the crime charged, and, therefore, his plea of not guilty was false. The trial court is vested with broad discretion in determining the latitude and propriety of the argument of counsel. We find no abuse of the trial court's discretion in overruling defendant's objections to the above statements.

■ Defendant next contends the trial court erroneously admitted hearsay evidence when it 1) permitted police officer Kling to testify concerning the victim's description of the robber which allegedly was contained in a police report written by another officer and 2) admitted a composite drawing of the robber allegedly compiled by an artist who did not testify at trial. Officer Kling was asked by the prosecutor to repeat the description of the robber given by the victim. Defendant argues that the description subsequently given by Kling was contained in a police report written by another officer and constituted inadmissible hearsay. We note initially that the record does not support defendant's assertion that Kling was testifying about a description contained in a police report prepared by another officer. Kling testified that he saw the victim at the gas station about three minutes after the robbery had occurred. Meatte testified that he gave his description of the robber to Kling at the gas station. Also, at another point in the trial the prosecutor did attempt to have the police report written by Officer Kegel marked as an exhibit, and asked Officer Kling to read the description contained therein. The trial court properly prevented Kling from reading from the police report. Regarding defendant's allegation of error, the record indicates that Kling was testifying to the description given by the victim at the scene of the crime rather than to the description contained in the police report.

Thus, we must examine the propriety of Kling testifying to the description given by John Meatte at the gas station. The trial court admitted Kling's testimony to show the course of the investigation conducted by the police. Even assuming this was hearsay testimony, we believe its admission would not be prejudicial. Hearsay evidence is objectionable because the person who makes the statement is not under oath and its accuracy and trustworthiness cannot be tested by confrontation and cross-examination. In the present case, the challenged statement was made by the victim, John Meatte. Meatte testified under oath, confronted defendant and was thoroughly cross-examined with respect to the details of the crime including the description he gave police immediately after the robbery. Under these circumstances, defendant could not be prejudiced by the admission of Meatte's out-of-court statement. *State v. Robinson*, 484 S.W.2d 186, 189 (Mo. 1972); *State v. Hankins*, 612 S.W.2d 438, 440 (Mo. App. 1981).

■ Defendant also argues the admission in evidence of a composite drawing of the robbery suspect was error because it was compiled by an unknown artist who did not testify at trial. There is no support in the record for defendant's assertion that the composite was prepared by a person who did not testify at trial. Officer Kling, on several occasions, testified that he made the composite based both on Meatte's and his own observations of the suspect on March 12, 1979. Furthermore, the composite would be admissible even if we were to assume that it was prepared by an artist who did not testify at trial provided the proper foundation was established as was done here. Defendant's fifth point is denied.

■ Defendant next contends that several questions and statements by the prosecutor brought defendant's character in issue when he had not placed his character in issue at trial. Defendant specifies five questions or statements in his brief on appeal which allegedly referred to his character. As to four of these statements or

questions, there was no objection on the basis that they constituted references to defendant's character. As to the one remaining challenged statement, defendant did object on the ground that it brought his character in issue. However, defendant failed to include this theory of objection to the statement in his motion for new trial. In order to preserve a point for appellate review the point raised on appeal must be based upon the theory of the objection as made at the trial and as preserved in the motion for new trial. *State v. Stevenson,* 589 S.W.2d 44, 48 (Mo.App. 1979); *State v. Kuhrts,* 571 S.W.2d 709, 712–713 (Mo.App. 1978). Thus, defendant has not properly preserved this point for review. We have nevertheless examined the challenged statements and questions and find no merit to defendant's contention that they brought his character in issue.

■ Defendant next contends the trial court erred in overruling his renewed objection to a pretrial motion to suppress Meatte's identification of the defendant on the grounds that the pretrial identification was impermissibly suggestive and that no independent source for an in-court identification existed. Defendant has failed to provide this court with a transcript of the hearing on the pretrial motion to suppress identification. This motion had been heard and overruled. Pursuant to Rule 81.12(a), defendant was responsible for providing those portions of the record and proceedings necessary to the determination of the issues presented to the reviewing court for decision. This point is not reviewable on appeal because of the failure to furnish the transcript of the pretrial hearing to this court. *State v. Smith,* 612 S.W.2d 895, 897 (Mo. App. 1981); *State v. Harris,* 564 S.W.2d 561, 565–566 (Mo.App. 1978). We have reviewed the record before us and do not find that the pretrial identification procedures were impermissibly suggestive. This point is denied.

■ Defendant next alleges that blacks were systematically and intentionally excluded from the jury panel and petit jury at his trial. There were two blacks on the jury panel. Both of these individuals were peremptorily stricken by the prosecutor. Defendant argues that the selection system in St. Louis County systematically excludes blacks, and resulted in a jury which did not represent a fair cross-section of the community. Defendant has not specified how blacks are systematically excluded from the jury selection process. He has only pointed to the racial composition of a single venire. Systematic exclusion of a distinctive group is not established by the fact that members of the distinctive group are not represented or are under-represented on a particular jury panel. Defendant has failed to make a prima facie showing of systematic exclusion. *State v. Carter,* 572 S.W.2d 430, 434 (Mo.banc 1978); *State v. Anderson,* 598 S.W.2d 593, 594 (Mo.App. 1980); *State v. Mears,* 588 S.W.2d 519, 521 (Mo.App. 1979).

Defendant also argues that the prosecutor's utilization of peremptory challenges to strike the only blacks on the venire constituted systematic exclusion. Defendant has not provided any evidence of a systematic pattern of exclusion in St. Louis County of black venire persons as petit jurors through the state's use of its peremptory challenges. Lacking this evidentiary support, the defendant's point must be denied. *State v. Eaton,* 568 S.W.2d 541, 544 (Mo.App. 1978); *State v. Hampton,* 559 S.W.2d 224, 225 (Mo. App. 1977); *State v. Williams,* 535 S.W.2d 128, 130 (Mo.App. 1976).

■ Defendant's final contention is that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence to find defendant guilty of first degree robbery. In determining the sufficiency of the evidence we must view the evidence in the light most favorable to the state, consider all favorable inferences which may be drawn therefrom and reject evidence to the contrary. *State v. Crews,* 585 S.W.2d 131, 136 (Mo.App. 1979). The jury has the right to believe or disbelieve all, part or none of the testimony of any witness. Furthermore, the testimony of a single witness may be sufficient to constitute substantial evidence. *State v.*

*Williamson*, 595 S.W.2d 4, 7 (Mo.App. 1979). John Meatte positively identified defendant as the man who entered the Clark gas station on March 12, 1979. Meatte testified that defendant pointed a .44 or .45 caliber revolver at him, took the gas station's money and departed. This evidence constituted sufficient substantial evidence to make a submissible case and the trial court did not err in overruling defendant's motion for judgment of acquittal.

Judgment affirmed.

STEPHAN, P. J., and STEWART, J., concur.